[Civ. No. 19497. First Dist., Div. One. Feb. 23, 1962.]

ROBERT BLUM et al., Plaintiffs and Respondents, v. THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents; JAMES M. SMITH et al., Defendants and Appellants.

640

Sylvester Andriano, Ferrari & Ferrari and Louis Ferrari, Jr., for Defendants and Appellants.

Lowenthal & Lowenthal for Plaintiffs and Respondents.

Dion R. Holm, City Attorney, Thomas M. O'Connor, Public Utilities Counsel, Robert M. Desky and McMorris M. Dow, Deputy City Attorneys, for Defendants and Respondents.

BRAY, P. J.—Defendants and cross-complainants, Eaton & Smith, appeal from that portion of the judgment which provided that its recovery from defendant and cross-defendant City and County of San Francisco (hereafter referred to as the City) be without interest for any period prior to judgment.

## QUESTIONS PRESENTED

1. Does section 3287, Civil Code, apply to the City and County of San Francisco?

2. Is there any other issue on this appeal?

## RECORD

This is a phase of the litigation resulting from the removal of certain cable car lines in San Francisco. In 1948 section 119.3 was added to the San Francisco Charter. Its effect was to prevent the abandonment or removal of the existing cable car lines, which were owned by the City and operated by its

Municipal Railway. In 1954 the voters adopted proposition E which was ratified by the Legislature in 1955. This amended section 119.3 and unfroze the Washington-Jackson Street cable car line west of Hyde Street, removing its charter protection against the abandonment or discontinuance thereof by the City's Public Utilities Commission under charter section 132.1. In September 1956, service on the above-mentioned portion of this line was discontinued. Bids for removal of the tracks were requested. Eaton & Smith was the successful bidder, and in January 1957, a contract was entered into between Eaton & Smith and the City for the removal of the tracks and the repair of the street. The work commenced February 11. However, the same day, plaintiffs, taxpayers, brought this representative suit against the City, certain of its officials, and Eaton & Smith to restrain the removal of the tracks and the operation of the contract. A temporary restraining order was issued that day but it was dissolved March 11 and a preliminary injunction was denied.[1] Work under the contract again commenced March 18. The work was completed July 31. Notice of completion was executed October 30, 1957.

In view of the filing of this action, the City Controller withheld payment to the contractor under the authority of section 85 of the charter. Eaton & Smith thereupon filed a cross-complaint for the value of the work done. The gravamen of plaintiffs' complaint is (1) that the passage of proposition E, the amendment to section 119.3 of the charter, was void because of fraud of certain city officials, and (2) that the Eaton & Smith contract was illegal because the cable car service was never legally abandoned under section 132.1 of the charter. May 25, 1959, after trial, the court filed an interlocutory judgment in mandate. This required the City's Public Utilities Commission to consider the petition of the "Cable Car Restoration Committee" and decide if service should or should not be restored. The judgment further provided that if the commission decided that service was not to be restored, it was then to follow the procedure outlined in section 132.1 of the charter.

The final judgment herein held that:

1. The amendment to section 119.3 was properly adopted

---

[1] Plaintiffs filed notice of appeal therefrom, but the appeal was never perfected. On March 22 plaintiffs moved for a temporary injunction pending appeal. This was granted on May 3, conditioned on plaintiffs' posting a $25,000 bond. June 13, on motion of Eaton & Smith, this temporary injunction was vacated.

and there was no conduct on the part of the city officials which could invalidate the adoption.

2. The interlocutory judgment in mandate had been fully complied with.

3. The contract between Eaton & Smith and the City was valid and had been ratified, confirmed and approved by action of the City's Public Utilities Commission and its Board of Supervisors.

The judgment awarded Eaton & Smith $201,072.13 "without interest thereon for any period prior to entry of judgment herein." It is from this latter part of the judgment that Eaton & Smith appeals. Plaintiffs and the City did not appeal.

1. *Section 3287, Civil Code, Applies.*

The court's refusal to award interest prior to judgment was based upon its determination that that section prohibited such an award. ▉▉▉ "[I]n the absence of special statutory authorization, interest cannot be recovered against the state or a municipality." (*Los Angeles Dredging Co.* v. *City of Long Beach* (1930) 210 Cal. 348, 362 [291 P. 839, 71 A.L.R. 161].)

Section 3287 prior to its amendment in 1955 provided: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

As this section then read it was held not to apply to either cities or counties. (*Hopkins* v. *County of Contra Costa* (1895) 106 Cal. 566, 572-573 [39 P. 933]; *Imperiale* v. *City & County of San Francisco* (1954) 128 Cal.App.2d 277, 282-283 [275 P.2d 569]; *McGuire & Hester* v. *City & County of San Francisco* (1952) 113 Cal.App.2d 186, 193-194 [247 P.2d 934].)

In 1955 the Legislature amended section 3287 by adding the following sentence: "This section is applicable to recovery of damages and interest from any such debtor, *including any political subdivision of the State.*" (Stats. 1955, ch. 1477, § 1; emphasis added.)

▉▉ ▉▉ If the intent of the Legislature was to alter the above interpretations of the section, it fell short of the mark, for, while counties are political subdivisions of the state, the law is positive that cities are not. This was clearly decided as to section 3287 as amended when the Supreme Court decided

*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 466-468 [326 P.2d 484]. (See also *Anderson* v. *City of Long Beach* (1959) 171 Cal.App.2d 699, 702 [341 P.2d 43].)

Thus, the question is—is the City and County of San Francisco a political subdivision of the state?

The City and plaintiffs say that it is a municipal corporation and not a county or political subdivision of the state. Eaton & Smith says to the contrary. As will hereafter appear, both contentions are right. ■ The City is both a city and a county and has the powers of both. In *Kahn* v. *Sutro* (1896) 114 Cal. 316 [46 P. 87, 33 L.R.A. 620], the court said: "It may, therefore, be regarded as settled by the decisions of this court that the city and county of San Francisco is a municipal corporation, and in matters of government is to be regarded as a city. . . . [T]he territory over which that government is exercised is at the same time a county, and for those purposes for which county officers exercise authority, not derived from the charter and disconnected with municipal government, its officers are properly termed county officers." (P. 322.)

In *Nicholl* v. *Koster* (1910) 157 Cal. 416 [108 P. 302], the court said: "The consolidated city and county of San Francisco partakes of the nature of a city and a county. It has the powers and performs the functions of both. The section of the constitution declaring that municipal charters prevail over general laws in municipal affairs relates solely to cities and towns. It has no application to San Francisco, except in so far as that subdivision of the state possesses and exercises municipal functions and constitutes a city, as distinguished from a county. With respect to the powers and functions of a county exercised by San Francisco, as in any other county of the state, that section has no concern. The power of the legislature to enact general laws for the government of counties as such, including San Francisco, remains unaffected, and unimpaired by that section. It does not make the charter of San Francisco paramount to such laws as to county affairs." (P. 420.)

We said in *Madison* v. *City & County of San Francisco* (1951) 106 Cal.App.2d 232, 238 [234 P.2d 995, 236 P.2d 141], concerning the City and County of San Francisco, "It thus has and performs the functions of a county and of a city. When acting in respect to a municipal affair it is free of state legislative control but when acting in respect to any other matter it is subject to and controlled by state general

laws. The 'functions performed in the particular case determine whether San Francisco is to be viewed as a city or a county.' (*City & County of San Francisco* v. *Collins*, 216 Cal. 187, 191 [13 P.2d 912].)''

The City's own charter shows that it has the powers of both a city and a county.

"Section 2. . . . The city and county may make and enforce all laws, ordinances and regulations necessary, convenient or incidental to the exercise of all rights and powers in respect to its affairs, officers and employees, and shall have all rights and powers appropriate to a county, a city, and a city and county, subject only to the restrictions and limitations provided in this charter. . . .

"Section 3. Where a procedure for the exercising of any rights or powers belonging to a city, or a county, or a city and county is provided by statute of the State of California, said procedure shall control and be followed unless a different procedure is provided in, or by ordinance enacted under authority of, this charter.''

Section 60 provides for appointment of county officers and section 18 sets out their powers and duties.

Thus, whether section 3287 applied to the contract here depends upon whether the removal of the cable car line and the reconstruction and repavement of the streets from which they were removed was a county or municipal function.

Eaton & Smith cites *Wilkes* v. *City & County of San Francisco* (1941) 44 Cal.App.2d 393, 397 [112 P.2d 759]; *Rafferty* v. *City of Marysville* (1929) 207 Cal. 657, 665 [280 P. 118]; *Douglass* v. *City of Los Angeles* (1935) 5 Cal.2d 123, 128 [53 P.2d 353]; *George* v. *City of Los Angeles* (1938) 11 Cal.2d 303, 308 [79 P.2d 723], all cases brought for injuries suffered on city streets allegedly due to tortious acts of the particular city or its officers, and holding that the Public Liability Act applied to cities. In those cases it was held that the safety of city streets is a matter of statewide concern and that a city charter cannot exclude the city from the operation of a general law of the state imposing a liability on municipalities generally for the negligent acts or omissions of its servants in the maintenance of the public streets. Reasoning from this rule, Eaton & Smith contends that the work done under its contract was "inalterably tied up with the maintenance of said streets in a safe condition for pedestrians and for the flow of traffic'' and hence could not be a municipal affair but is a matter of statewide concern.

Eaton & Smith cites no cases holding that the location, relocation or removal of its car lines or the repair and maintenance of streets is not a local or municipal affair. There is a considerable difference between making liability for injury through the negligent maintenance of streets by a city a matter of statewide legislation and making the physical work of maintaining streets such a matter, even though incidentally safety of the general public may be involved in the latter. ██ Moreover, it is clear from the authorities that the work being done under the Eaton & Smith contract is purely a municipal affair. (*Byrne* v. *Drain* (1900) 127 Cal. 663 [60 P. 433]; *Barber Asphalt Paving Co.* v. *Costa* (1915) 171 Cal. 138 [152 P. 296]; *Loop Lumber Co.* v. *Van Loben Sels* (1916) 173 Cal. 228 [159 P. 600]; *City of Los Angeles* v. *Central Trust Co.* (1916) 173 Cal. 323 [159 P. 1169]; *Stege* v. *City of Richmond* (1924) 194 Cal. 305 [228 P. 461]; *Raisch* v. *Myers* (1946) 27 Cal.2d 773 [167 P.2d 198]; *City of Walnut Creek* v. *Silveira* (1957) 47 Cal.2d 804 [306 P.2d 453].) ██ The operation of a street railway by San Francisco is a municipal affair. (*Mullins* v. *Henderson* (1946) 75 Cal.App.2d 117, 129 [170 P.2d 118].)

*George* v. *City of Los Angeles, supra,* 11 Cal.2d 303, 308, points out that if in the construction or maintenance of a public street a city creates a dangerous and defective condition therein, the city is liable under general law for injuries caused by such condition, yet ''as a general proposition the acquisition, construction, maintenance and repair of roads and streets are undisputed functions of the government, and a municipality reserves the right to change its street improvement system when it is reasonably wise to do so. . . .''

██ There was no evidence that the reason for the change in the streets involved here was any unsafe condition thereof. The saving to the City resulting from the proposed operation of a bus line rather than the operation of the cable car line seemed to have been an important factor in the removal of the car line. Hence it cannot be concluded that the change was anything but merely an exercise of the municipal government's right to remove the rails and to repair the streets. ██ Moreover, it would seem logical that improving the streets for safety would not constitute a state but a municipal function. The state concern only attaches to recovery if injury results.

In 1959, section 3287 was amended by substituting for the last sentence which then read, ''This section is applicable to

recovery of damages and interest from any such debtor, including any political subdivision of the State," the following: "This section is applicable to recovery of damages and interest from any such debtor, including the State or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the State." (Stats. 1959, ch. 1735, p. 4186.) The amendment has no direct bearing on the outcome of this case because its effective date was after entry of judgment herein. However, each party contends that it has some bearing on the construction to be given the section as it theretofore stood. Eaton & Smith contends that it is a clarification of the 1955 amendment. The City points to the apparent redundancy of the 1959 amendment if "political subdivision of the State" is to be considered to include "city and county" and therefore concludes that the Legislature did not intend in 1955 that "political subdivision of the State" should include a city and county. It should be pointed out that there is also an apparent redundancy between "county" and "political subdivision of the State" in the 1959 amendment. Thus, it appears that the amendment includes both entities which were and were not theretofore considered within "political subdivision of the State." This latter phrase in the 1959 amendment is clearly a catch-all, and does not help in the interpretation of the 1955 amendment.

 The fact that the funds appropriated for the project appear in the Road Commissioner's budget, that section 2006, Streets and Highways Code, provides that the "board of supervisors of each county" shall appoint a road commissioner, and that section 2007 provides for a road commissioner's budget, does not change the situation. These sections as applied to a city and county do not change the municipal functions performed by the Road Commissioner into county functions. Actually, the power to remove the rails and repair the streets comes from the city charter.

2. *There Is No Other Issue.*

Plaintiffs contend that by this appeal the door is opened to the consideration of the correctness of the other matters determined in the judgment from which no appeal was taken by any of the parties, namely, that section 119.3 of the charter was properly adopted, that the interlocutory judgment in mandate had been fully complied with and that the contract upon which recovery was granted Eaton & Smith and the

award of $201,072.13 to Eaton & Smith were valid. If the award of the principal sum was erroneous, say plaintiffs, then obviously no interest can be allowed.

As no appeal was taken from any portion of the judgment except as to the denial of interest, and that appeal made on the sole ground that the court refused to apply section 3287, all other matters determined by the judgment are finally adjudged. Witkin, California Procedure, volume 3, page 2229, states that "It is generally assumed that the successful respondent, who does not appeal, cannot complain of anything." This is probably too broad an assumption. However, it may be properly applied to the facts of this appeal. Plaintiffs attempt to support their contention on two grounds: (a) That the parts of the judgment are so connected and interwoven with other parts that a consideration of the whole is required.

*American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 217 [246 P.2d 935] states: "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. . . . 'Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as the result of an appeal cannot affect the determination of the remaining issues of the suit. . . .' (*Attorney General* v. *Pomeroy*, 93 Utah 426 [73 P.2d 1277, 1294, 114 A.L.R. 726].)"

Applying the test here, it is clear that a determination that the trial court was correct or not correct in refusing to apply section 3287 would not affect the balance of the judgment. In *Swall* v. *Anderson* (1943) 60 Cal.App.2d 825, 827 [141 P.2d 912], the court stated that an appeal from that portion of a judgment awarding actual damages which denied treble damages did not require reconsideration of the whole case. There the principal question presented was the proper construction and application of a section of the Code of Civil Procedure and one of the Civil Code, just as here the principal question is the construction and application of section 3287. (See also *Estate of Hubbell* (1932) 216 Cal. 574, 578 [15 P.2d 503].)

Plaintiffs' cases are not in point. In *Blache* v. *Blache*

(1951) 37 Cal.2d 531, 537 [233 P.2d 547], the judgment concerned separate maintenance and property rights. Although both parties appealed it does not appear in what respect the appeals were limited. However, the court said that the reversal which the court was making set at large every issue in the case including the issues raised under the cross-complaint as the issues raised under the cross-complaint were not merely interwoven with, but in substantial part identical with the issues raised by the complaint. Therefore, said the court, the portions of the judgment were so interwoven with the whole that a reversal of a portion of the judgment required a reversal of the whole. This is not the situation in our case.

*American Enterprises, Inc.* v. *Van Winkle, supra,* 39 Cal.2d 210, was a declaratory relief action brought to determine the rights of the parties under a lease when the property was taken by the public in a proceeding in eminent domain. The court held that the lease had been terminated but that the lessee was entitled to the fixtures and equipment. The lessor did not appeal from the portion of the judgment declaring the lease terminated but did appeal from the portion giving the lessee the fixtures and equipment. The lessee did not appeal. The court held that the trial court had failed to determine the rights of the parties upon which the lessee's right to the fixtures and equipment depended and hence the judgment was an inseparable one.

In *Milo* v. *Prior* (1930) 210 Cal. 569 [292 P. 647], judgment was entered in favor of the defendant " 'without prejudice to plaintiff's bringing a new action herein, if so advised.' " (P. 570.) Defendant appealed solely from the quoted portion. The reviewing court held that that portion of the judgment was erroneous, but "it is impossible to ascertain upon the record now before us whether or not the trial court, were it cognizant of its inability to enter a judgment 'without prejudice,' would have given judgment for the defendant." (P. 571.) Moreover, "we cannot say upon this appeal that a judgment for appellant is the only judgment on the merits warranted by the evidence, nor that the trial judge was of the opinion that appellant was entitled to a judgment upon the merits. This being so, we must assume that the reservation must, of necessity, enter into and qualify each and every part of the judgment." The judgment as a whole was then reversed.

*Everly Enterprises, Inc.* v. *Altman* (1960) 54 Cal.2d 761 [8 Cal.Rptr. 455, 356 P.2d 199], modified in the interest of justice a portion of a judgment that had erroneously invalidated a deed of trust which constituted the defendant's only security after he had abandoned an appeal from an adverse judgment on a cross-complaint for rescission of a stock transfer for misrepresentation. Actually, the respondents agreed to such modification, stating that they did not desire to take an advantage. Obviously, none of the above cases cited by plaintiffs are in any way similar to the case at bench.

▮▮▮▮▮▮ (b) The second contention made by plaintiffs likewise is without merit. That contention is based on a statement from *Wilson* v. *Wilson* (1958) 159 Cal.App.2d 330, 334 [323 P.2d 1017] : "The law seems well settled that acceptance of the fruits of a judgment and retention of the right to appeal therefrom, are not concurrent, but are wholly inconsistent. An election of either is a waiver and renunciation of the other.''

But there is a clear exception to this rule when the party appealing is requesting something additional to that already awarded. The rule of *Wilson* means that one cannot accept benefits and then ask for that which is inconsistent with what has already been attained. Here there is nothing inconsistent in the failure of Eaton & Smith to appeal from that portion of the judgment awarding them a principal sum and at the same time by appeal asking for interest on that sum, which interest has been denied. This exception to the rule is well shown in *Estate of Hubbell, supra*, 216 Cal. 574, where the court permitted an appeal on the issue of interest where the appellant had already collected the principal sum of the legacy awarded him and on which the claim to interest was based.

Our decision makes it unnecessary to consider other contentions made by the City.

That portion of the judgment appealed from is affirmed.

Tobriner, J., and Sullivan, J., concurred.