[Civ. No. 14557. First Dist., Div. One. May 15, 1951.]

BARBARA WILSON, Respondent, v. FRANCIS A. WILSON, Appellant.

Louis Ferrari for Appellant.

Lucille F. Athearn for Respondent.

BRAY, J.—Appeal from an increase of alimony from $600 to $1,000 per month, allowance of $1,000 attorney's fees and a requirement that defendant post security in the sum of $24,000 to guarantee payment of future alimony.

### QUESTIONS PRESENTED

1. Was there a change in condition between the time of the previous awards of alimony and now? In determining this question is the court barred from considering new but similar conditions to those previously considered? 2. Was the security requirement proper? 3. Attorney's fees.

### RECORD

On April 4, 1945, plaintiff, after a protracted and bitterly contested trial before Honorable George W. Schonfeld, was granted an interlocutory decree of divorce against defendant, in which plaintiff was awarded $500 per month as permanent support and maintenance. Each party was awarded a half interest in the community real property consisting of a dwelling house and premises. Plaintiff was awarded all the

furniture therein and the sole right to the use, occupancy and control of the real property "so long as she shall choose to so use, occupy or control the same." Defendant unsuccessfully appealed from this decree. (*Wilson* v. *Wilson,* 76 Cal.App.2d 119 [172 P.2d 568].) During the pendency of the appeal plaintiff's alimony was increased by order of court from $500 to $600 per month, with a provision that if the decree were affirmed, the amounts paid thereunder would be credited against the amounts payable under the decree. Later on, the credit was made in such manner that plaintiff actually received only $500 per month. A final decree of divorce, which followed the provisions of the interlocutry decree, was entered as of December 5, 1946. That same month plaintiff moved for an increase in alimony to $1,000 per month. This motion was denied, Honorable Lile T. Jacks presiding. May 20, 1948, plaintiff again moved to increase the alimony, and on August 5th, Honorable Milton D. Sapiro presiding, the court increased it to $600. May 13, 1949, plaintiff again moved to increase the alimony to $1,000 per month on the ground that since the previous order was made circumstances and conditions had changed (1) as to her health and physical condition, and (2) as to the necessity for extensive repairs and replacements to the home because of its age and condition, and particularly because on May 2, 1948 (a clerical error, as the evidence shows the true year was 1949) the pipes in the house burst, causing damage to two floors, ruining furniture, walls, rugs and ceilings. There was a contested hearing. Defendant's main contention was that these matters had been in contemplation of the court in the previous alimony orders. The court found that since the last order the conditions and circumstances surrounding the parties had materially changed so that plaintiff can no longer maintain herself upon the same standard contemplated by the previous orders. (1) The health and physical condition of plaintiff had changed materially for the worse in that she is presently under the constant care of physicians and nurses necessitating monthly outlay of moneys for treatments, medicines and incidentals not contemplated by the court, and which will continue indefinitely. (2) The dwelling house has so deteriorated by age, obsolescence "and breaking down of plumbing and/or heating facilities and fixtures, with resultant necessary replacement and repair, as well as resultant damage and consequential repair to the interior walls, ceilings, and wall coverings of the interior of the house, that the rehabilitation

of the same has caused plaintiff to incur necessary obligations in the sum of $13,825.00''; ''that further breakage and recurrent damages to said premises may reasonably be anticipated in the future because of the age of said dwelling-house, and that the same will in the future be the source of necessary expenditures of like amount on the part of the plaintiff.'' The court further found that defendant is a millionnaire (no claim is made that defendant is not able to make the payments ordered) and that a necessary adjunct to the order granting plaintiff the exclusive occupancy of the home is the right to have it restored to a habitable condition. The court made an order increasing the alimony and requiring security and a separate order for attorney's fees. The appeals from both orders were consolidated by stipulation.

CHANGE OF CONDITIONS ON ACCOUNT OF PLAINTIFF'S HEALTH

 Both parties agree that an order awarding alimony cannot be modified unless there be a change in conditions or circumstances subsequent to such order. (See *Molema* v. *Molema*, 103 Cal.App. 79 [283 P. 956]; *Triest* v. *Triest*, 67 Cal.App.2d 320 [154 P.2d 2].) The determination of whether or not there is such a change rests largely in the discretion of the trial court and its determination cannot be upset by a reviewing court unless there is an abuse of discretion. (See *Triest* v. *Triest, supra*; *Lent* v. *H. C. Morris Co.*, 25 Cal.App. 2d 305 [77 P.2d 301].) It is not a question of what this court would have done in the first instance, but whether there is substantial evidence to support the trial court's determination.

Defendant's main attack on the court's findings is his claim that the evidence shows that the conditions are (1) the same, or (2) similar to those before the court at the prior proceedings. Plaintiff was the only witness. Defendant produced no witnesses, standing on his cross-examination of plaintiff, his contention that plaintiff had not made out a case, and the introduction of transcripts of the prior hearings.

 Plaintiff testified regarding the change in her health, that she is under treatment by Dr. Schwartz for a nervous affliction growing out of this litigation; that she visits him about every second day for medication, therapy and injection; that he has informed her this treatment will continue indefinitely and will cost approximately $85 per month. At the hearing before Judge Sapiro in 1948 she testified that with the then allowance she did not have any money as she had

been ill and in the hospital about Easter and had paid out several hundred dollars for doctors and hospitalization.

It is obvious that the circumstances in 1948 and now were not the same nor even similar. In 1948 she was testifying about past expenses which had cut into her alimony (she had recently been confined to a hospital). There apparently was no testimony that she was then in need of medical care. It is a reasonable inference that if Judge Sapiro, in the $100 per month increase which he allowed, included anything for medical expenses, it was for past expenses, not future ones. She also testified that she had dentistry to be done for which an estimate of $1,000 had been given her. We cannot say that the trial court abused its discretion in finding that the circumstances concerning plaintiff's health had changed.

### THE HOME

The trial court found that in awarding plaintiff the use of the home it was contemplated that it should be restored to a habitable condition; that plaintiff had incurred necessary obligations therefor in the sum of $13,825. Defendant contends that the items comprising this sum are (1) the same, or (2) similar to those theretofore considered. The house is old. It contains 20 or more rooms, a number of bathrooms and about fifteen outlets for hot water.

### SIMILARITY OF CONDITIONS

Before discussing the items of expense in detail, we will dispose of the following contention made by defendant. He contends that any increased allowances for repairs and replacements, no matter what might happen in the future, are barred because the court, on the prior hearings, had before it the facts that the house was old, dilapidated and in need of repair, that the pipes had broken and were likely to burst and that heaters might have to be replaced. There is no such rule. The absurdity of such a rule is shown when it is considered that if the entire floor of one of the stories of the house were to fall in, such a rule would bar plaintiff from seeking an increase in alimony to meet the situation merely because the prior judges knew that the house was in bad condition. The question is not whether the conditions are similar to conditions theretofore known, but whether the conditions are new or additional to the ones for which allowances had been made.

Plaintiff testified that the pipes had broken on five occasions, the last being approximately May 2, 1949. She then testified that as a result of this last bursting of the pipes she

had received estimates of $2,010 for the necessary replacement of plumbing and $3,000 for necessary repair, painting and papering. She introduced in evidence the estimate of Emil Appelman, a licensed painting contractor who estimated the cost of interior work at $3,857 and exterior work at $2,278, a total of $6,135. Adding the $2,010 for plumbing to this, there was evidence to support a finding by the court that, due to a new and changed condition resulting from the last bursting of the pipes, an expenditure of $8,145 was necessary. Defendant contends that the $2,010 estimate for replacement of pipes is the same as the Peterson estimate dated 1946. The evidence does not support this claim. Rather it refers to the results of the last bursting of the pipes.

Defendant requested a continuance of the hearing so that he might have his own architect and plumber examine the house to determine if plaintiff's testimony concerning the recent damage done by the bursting of pipes, and her estimates of the repair, were true. It is significant that after a visit to the house by the architect (it is not clear if a plumber went, too), defendant offered no evidence to dispute plaintiff's testimony concerning the damage nor the cost of repairs.

### Same Items

The findings state that plaintiff had incurred $13,825 for the rehabilitation of the old house. Of this sum approximately $4,144.95 were expenditures which were before Judge Sapiro at the prior hearing. This sum is comprised of the following items: (1) bill of H. Campbell for $1,120, headed "Plumbing and Repairs," dated September 27, 1947; (2) Goss Sheet Metal Works, dated February 12, 1947, for installation of furnaces, $1,195, and a statement dated May 21, 1948, showing the full payment of this bill; (3) estimate of Demarta Marino Company, painters, dated December 20, 1946, $574; (4) proposal of Albert Massagli, dated December 20, 1946, to repair sidewalk, $58; (5) estimate of S. Peterson and Son, dated December 23, 1946, for replacing pipes, $995 (this work was apparently not done); (6) bill for Venetian Blind Laundry, $202.95, dated December 16, 1946.

There was also included a figure of approximately $1,300 which plaintiff had expended on back taxes. Plaintiff also had paid minor bills for upkeep for which she did not keep receipts, the amounts of which were not determined nor included in the court's total. There is some confusion in plaintiff's testimony between gas and water heaters and fur-

naces. The furnaces are covered by the Goss bill, and were evidently the gas heaters to which plaintiff referred. There may have been gas water heaters bought or needed. Apparently, however, the court did not include these in its figures. Plaintiff testified that the roof needs repair and the garage leaks. No figures were included for these items.

It is apparent from the findings that the court's purpose in referring to the $13,825 was to show how expensive the maintenance of the old house had been to plaintiff and as foundation for the court's additional finding that conditions requiring further expenditures in the future might reasonably be expected. Thus, in a situation where over a past period of time the repairs amounted to $13,825 and repairs in the future probably would be required in the same degree, it was not unreasonable to make the allowance which the court did, even though a portion of the named amount had been theretofore considered. There was definitely facing plaintiff an expenditure of $8,145 for repairs and replacements to the home and a certainty from past history that even with these repairs and replacements, there would continue to be more expenditures. Moreover, plaintiff was faced with an expenditure for medical services of $85 per month or $1,020 a year, plus $1,000 for dentistry. Thus, there was at least $10,165 to be expended by her within the year, and there was the fact that the future would require additional expenditures. The increased allowance of $400 per month would amount to only $4,800. It is obvious that the court in making such allowance to help plaintiff meet that situation did not abuse its discretion. In determining a basis for alimony, there does not have to be the particularity as to each item which would be required were a creditor suing on each item. There need be only a showing upon which the court can determine approximately what the needs of the wife are.

Taking into consideration the monthly doctor bill, the amount to be incurred for dentistry, the $8,145 estimates, the fact that there must be repairs to the roof and garage, the fact that plaintiff's health condition would apparently continue, and that the house would continue to require repair and replacement, the evidence was sufficient to justify the court in finding that there was a change in circumstances and in exercising its discretion in increasing the alimony.

Defendant contends that the evidence shows that plaintiff's financial condition changed for the better, rather than for the worse. He bases this contention on her testimony that within

the preceding year she had received $2,400 for paintings which she had painted. However, she testified it cost her $100 a month for frames, paints, brushes and canvases, and that she spent $1,800 a year in entertainment for the purpose of advertising her work. Her income tax report shows that for that year she took a $1,475 loss in the operation of her "art" business. Her credibility in this respect was for the trial court.

## ATTORNEY'S FEES

While the appeal is also from the order allowing attorney's fees, defendant makes no point concerning them in his briefs. The court found that plaintiff did not have sufficient funds to pay her own fees. The record discloses no abuse of discretion by the court in allowing $1,000 attorney's fees.

## SECURITY

Defendant's attack on the order requiring him to post security is that the court had no power to make such order in view of the fact that no notice was given of intention to ask that security be required, and that no intimation was given at any time during the hearing that the court was even considering the matter. The court had the power to make such requirement, even though no notice of intention to apply therefor was given. Section 140 of the Civil Code gives the court this power, as incidental to the granting of alimony. This, however, does not give the court the power to make such order out of a clear sky, without any request at the hearing therefor and without any intimation that the making of such order was being considered. Before such an order can be made the court must give the defendant an opportunity to make a showing as to why security should not be ordered. The record shows no. mention of security until the order was made.

Even though the record discloses, as found by the court,* that "the plaintiff has encountered extreme difficulty in the past in the collecting of her monthly alimony allowance," still the court abused its discretion in requiring the posting of security without first giving defendant an opportunity to be heard upon the subject. Our reversal of the order of the trial court in this respect is without prejudice to a redetermination of the matter upon giving defendant an opportunity to be heard.

---

*The record is not before us.

The judgment for counsel fees is affirmed. That portion of the order and judgment directing defendant to post security is reversed. In all other respects the order and judgment is affirmed. Plaintiff will recover costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 14, 1951, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1951. Carter, J., and Schauer, J., voted for a hearing.