[Civ. No. 17243. First Dist., Div. One. Apr. 4, 1957.]

JOAN BOWMAN, Respondent, v. DALE BOWMAN, Appellant.

Cornish & Cornish for Appellant.

Harris, Darter & Older and Cyril Viadro for Respondent.

BRAY, J.—This appeal by defendant from portions of an interlocutory decree of divorce, after denial of a motion for new trial, raises two questions: (1) Is the property of the parties community or joint tenancy? (2) The propriety of the order of $75 per month support for each of two of the three children.

RECORD

After 13 years of marriage plaintiff sued defendant for divorce on the grounds of extreme cruelty, asking for custody of the three children of the parties and a division of the community property, which allegedly included the family home. Defendant cross-complained on similar grounds asking for the custody of the children and alleged the home to be in joint tenancy. The court granted plaintiff the divorce, found the home to be community property, awarded it and the household furnishings to plaintiff, granted her custody of the children, subject to defendant's right of visitation, ordered defendant to pay plaintiff for the support of two of the children, $75 each per month, $60 per month for the support of the third child, and granted plaintiff $1 per month as alimony. Defendant was awarded a 1951 Plymouth, a life insurance policy, a trailer and money in a credit union. Defendant appeals from the portion of the decree finding the home to be community property and awarding it to plaintiff, and from the $75 allowance to the two children.

1. *Joint Tenancy or Community Property.*

The deed to the property was taken in joint tenancy. This fact raises a rebuttable presumption that the property was in fact held in joint tenancy, and places on the party claiming it to be community property the burden of overcoming the presumption. (*Schindler* v. *Schindler* (1954), 126 Cal.App.2d 597 [272 P.2d 566]; *Jones* v. *Jones* (1955), 135 Cal.App.2d 52 [286 P.2d 908].) The fact that the property was purchased with community funds, standing alone, is insufficient to rebut the presumption created by the form of the deed. (*Gudelj* v. *Gudelj* (1953), 41 Cal.2d 202 [259 P.2d 656].) Parol evidence of an oral agreement by, or intention of, the parties to hold it as community property is admissible. (*Tomaier* v. *Tomaier* (1944), 23 Cal.2d 754 [146 P.2d 905].) While the presumption cannot be rebutted by an understanding of one party uncommunicated to the other (*Gudelj* v. *Gudelj, supra*), an understanding to hold it as community property, in spite of the form of the

deed, may be shown by the conduct and declarations of the parties. (*Thomasset* v. *Thomasset* (1953), 122 Cal.App.2d 116 [264 P.2d 626]; *Socol* v. *King* (1950), 36 Cal.2d 342 [223 P.2d 627].) Here there was admittedly no express agreement that the property was to be held other than as shown by the deed. Defendant claims there was no evidence of any mutual understanding or intention of the parties to hold the property as community property and that, therefore, the presumption was not overcome.

██ Our task, then, is to determine whether there is substantial evidence of such understanding or intention. The home was purchased shortly after marriage, with moneys loaned by plaintiff's parents to make the down payment. This was repaid and the other payments on the property, from defendant's salary. Plaintiff did not remember discussing the purchase with her husband and the realtor. She did not know how the deed was made out, although she signed some papers at the realtor's office at the time of purchase. She and defendant never discussed the deed nor how it was to be made out. She thought it was community property as she thought that when persons were married, everything was community property. Defendant testified that at the time of the purchase he, plaintiff and a realtor had a conversation as to how the property was to be deeded. Plaintiff's parents advised that it be deeded in joint tenancy. The realtor agreed on the theory that should anything happen to one spouse, the other spouse would automatically get the home without probate. It was always defendant's understanding that it was held in joint tenancy and not as community property. In explaining his idea of the difference between the two, he stated that there would be no difference except that if one should die, the other would automatically obtain the property without probate, but in "ordinary everyday living there would be no difference. . . ." The property was bought with the intent that it should be a home for him, his wife and children. He was asked, "and that was your intention, it was to be community property and the home for them all, didn't you?" He answered "It was to be ours." Again he stated: "It is joint tenancy. It belongs to us." The fact that the original down payment came from the wife's parents and that community funds paid for the property, although by no means conclusive on the question, is of some significance. In his questionnaire defendant listed the home under "community property" although he added "joint tenancy."

While the court could have found to the contrary, there is substantial evidence to overcome the presumption and to show that both parties considered the property as community property and never intended it to have any of the attributes of joint tenancy except to avoid probate. Defendant considered the property "ours," belonging "to us," not separate. The only reason given for taking the deed in joint tenancy form was to dispense with probate. Defendant never mentioned the right of survivorship. Even today, he appears not to know the characteristics of a joint tenancy. The intent to avoid probate is not inconsistent with the intent to have the property as community property. As said in *Jenkins* v. *Jenkins*, 147 Cal.App.2d 527 [305 P.2d 289], where the circumstnces were almost identical with those here, the evidence was clearly sufficient to justify a finding that the sole purpose the parties had in following the realtor's advice that the property should be put in joint tenancy was as a matter of convenience to avoid probate. A somewhat similar situation occurred in *Mademann* v. *Sexauer*, 117 Cal.App.2d 400 [256 P.2d 34], where the property was purchased with the husband's money and the deed was taken in joint tenancy primarily because the parties believed thereby they would avoid probate and where it was contended that the presumption was not overcome, and it was held to be community property. Applicable here is the following (p. 403) : "In this connection it may be observed that the intricacies of the law and the subtle distinctions in respect to real estate titles, community property in particular, are not generally understood by the layman. Certainly the real nature of a particular transaction rather than the verbal form in which it is cast, must always be the decisive factor in cases of this nature.

"The record herein discloses substantial evidence that Mr. and Mrs. Mademann intended the real estate, whatever its source, to be community property, and that the joint tenancy deed was executed because of certain advice given by a person not a lawyer, and under the belief that this procedure would simplify the steps necessary to be taken upon the death of one spouse."

Our case is distinguishable from *Schindler* v. *Schindler*, *supra*, 126 Cal.App.2d 597, in that there while the wife thought the property deeded in joint tenancy was community property, there was no evidence that the husband ever considered it anything but joint tenancy. The wife was relying solely on her own intention. In our case the evidence supports the

conclusion that the husband, as well as the wife, considered it, in effect, community property.

2. *Support.*

A temporary order of support (apparently on stipulation) was issued requiring defendant to pay $60 per month for each child. He contends that the court abused its discretion in awarding in the interlocutory decree any sums in excess of that amount. The situation at the trial on this question was unusual. Neither side went into the question of the needs of the children. Defendant conceded that $60 per month is a reasonable sum for the support of each. Plaintiff was merely asked how much she was asking for the support of the children. She replied ''$75.00 each.'' Plaintiff offered an exhibit showing that defendant's earnings for the year were $8,817.28, take-home pay approximately $7,378. She also offered the questionnaire previously filed by defendant in in which he stated that the necessary monthly expenses of the three children were $180, and that $60 per month would be a fair and reasonable sum for him to pay for each child. Defendant testified when asked what he thought would be adequate for the support of the children: ''Taking into consideration the fact that there is no rent to pay or taxes on the home, in other words, the home was provided, I feel $60.00 a month, I believe, is very adequate.'' He further testified that he would be willing to take care of the taxes and insurance on the home. (Under the interlocutory decree he is not required to do so.)

It hardly needs the citation of authority that the amount of the allowance for the maintenance of the minor children of a divorced couple rests in the sound discretion of the trial judge and in the absence of an abuse thereof such an award will not be set aside on appeal. (*Karlsyst* v. *Frazier,* 213 Cal. 377, 381 [2 P.2d 362]; *Espinoza* v. *Espinoza,* 85 Cal. App.2d 155 [192 P.2d 33].) We cannot say that the trial court abused its discretion here in requiring defendant to pay $75 per month each for the support of 12-year-old boys in view of defendant's income.

Judgment affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1957. Schauer, J., was of the opinion that the petition should be granted.