[Civ. Nos. 20199, 20494. First Dist., Div. One. Feb. 7, 1963.]

ELMER F. BLANKENSHIP, Plaintiff and Appellant, v. GLADYS M. BLANKENSHIP, Defendant and Respondent.

738

Fred F. Cooper for Plaintiff and Appellant.

C. Leonard Rosenberg, Myron Harris, Harris, Darter & Older and Cyril Viadro for Defendant and Respondent.

SULLIVAN, J.—In this action for divorce two appeals have been taken by the plaintiff and cross-defendant husband. The appeal in No. 20199 involves the separate and community character of certain property of the parties, the division of the community property, the imposition of liens thereon and the award of alimony and attorneys' fees. The appeal in No. 20494 involves the award of attorneys' fees and costs on appeal.

The plaintiff, Elmer F. Blankenship, and the defendant, Gladys M. Blankenship, were married on November 11, 1933. They separated on June 3, 1955. There are no children.

The plaintiff commenced the instant action in 1959. By an amended complaint he sought a divorce on the grounds of extreme cruelty, and alleging that there was no community property, prayed for the partition of two parcels of real property claimed by him to be owned by the parties in joint tenancy. The defendant wife filed a cross-complaint for divorce on the grounds of desertion, cruelty and adultery, alleging several items of community property, including the two parcels claimed by the plaintiff to be owned in joint tenancy. The court denied a divorce to the plaintiff; granted a divorce to the defendant on her cross-complaint on the grounds of extreme cruelty and adultery; found that all of the items of property so alleged by the defendant, including the two parcels of real property, were community property; awarded to the plaintiff one parcel of real property located on Evelyn Avenue in Albany, a truck and trailer, the proceeds of a claim for personal injuries suffered by him, radio and shop equipment, and two life insurance policies; awarded to the defendant the remainder of the community property, consisting in part of the other parcel of real property located on Arlington Avenue in Berkeley, household furniture and furnishings, a 1946 Plymouth automobile, one policy of life insurance, a dance studio business, and money in the bank in defendant's name; and awarded defendant $100 per month alimony and $600 additional attorneys' fees. After the filing of notice of appeal in No. 20199, the court, on the defendant's motion, ordered plaintiff to pay defendant $250 attorneys' fees on appeal and $200 partial costs on appeal, the balance of such costs to be determined on the filing of a cost bill.

The plaintiff does not here claim that the granting of a divorce to the defendant is without evidentiary support and does not question the awarding of specific items of property other than the real property. Plaintiff directs his attack at those provisions of the judgment which relate to the two parcels of real property, the proceeds of his claim for personal injuries, alimony, attorneys' fees and costs. We proceed to the questions which are thus raised.

*Is the finding that both parcels of real property were community property supported by the evidence?*

Yes. Where real property is acquired by husband and wife by an instrument in which they are described as husband and wife, the presumption is that such property is

740

their community property unless a different intention is expressed in the instrument. (Civ. Code. § 164.) ■ However, where the deed names the spouses as joint tenants, there is a rebuttable presumption that the property was in fact held in joint tenancy and the burden of overcoming such presumption is on the spouse claiming the property to be community property. (*Bowman* v. *Bowman* (1957) 149 Cal.App.2d 773, 775 [308 P.2d 906]; *Jones* v. *Jones* (1955) 135 Cal.App.2d 52, 61 [286 P.2d 908].) ■ Accordingly, property thus acquired by the spouses by a joint tenancy deed may be shown to be actually community property according to their intention, understanding or agreement (*Socol* v. *King* (1950) 36 Cal.2d 342, 345 [223 P.2d 627]) and parol evidence is admissible for such purpose. (*Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 757 [146 P.2d 905].) ■ The presumption arising from the form of the joint tenancy deed cannot be rebutted solely by evidence as to the source of the funds used to purchase the property. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656].) ■ Nor can it be overcome by the secret intention of one of the spouses, not disclosed to the other at the time of the deed, that the property shall remain community property. (*Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Gudelj* v. *Gudelj, supra.*) ■ Nevertheless, although the property is acquired by a joint tenancy deed, an understanding to hold it as community property may be inferred from the conduct and declarations of the spouses. (*Bowman* v. *Bowman, supra*; *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 133 [264 P.2d 626].) ■ The parties acquired the Albany property in 1938 and the Berkeley property in 1950. Each was acquired by a joint tenancy deed. It is conceded that both parcels were purchased with community funds. At the trial the plaintiff admitted he did not know "what joint tenancy property is" or "what community property is"; that he did not recall whether he discussed with the real estate agent how title to the Albany property was to be taken; that he did not discuss with anyone how the title to the Berkeley property was to be taken; that he did not know how title to each parcel was taken until he learned of it from his present counsel in 1959; that he never discussed with the defendant how title to either of the parcels was to be taken; that he himself never instructed anyone to such effect; and that prior to consulting his present counsel he never discussed with anyone the legal

effect of a joint tenancy. The parties lived first in the Albany property and thereafter in the Berkeley property. The plaintiff admitted that he intended each in turn to be a home for himself and his wife.

Plaintiff offered and there were received in evidence certain written interrogatories proposed to the defendant and the defendant's answers thereto. In these defendant stated, *inter alia,* that there were no written agreements between the plaintiff and her relating to the title to their community property or the separate property of either, but up until the time of their present difficulties, "there was never any question about property. We assumed that we owned everything together. Both of our names were on everything — cars included."

There was testimony of several other witnesses to the effect that both the plaintiff and defendant referred to their home in Albany and later to their Berkeley home as "our home," "our house" and "our property."

The foregoing constitutes substantial evidence of the intention and understanding of both parties to continue to hold the real property in question as their community property despite the joint tenancy form of the deeds. They intended to and did acquire each parcel to be used as a home by them as husband and wife; they so used each parcel —first the Albany property and then the Berkeley property; they referred to each over the years as "our home," "our house" and "our property." Plaintiff argues that they would refer to the property as "our property" whether the joint ownership was in the form of a joint tenancy or community property. However, under the circumstances, the court reasonably could, and apparently did, find in the above expressions used by the parties a special import and conclude that the parties meant property belonging to them as husband and wife, rather than as joint owners apart from such marital relationship. Again plaintiff's argument is not very persuasive when the evidence shows he had no idea what a joint tenancy was. Finally, even if we accept plaintiff's premise that the expressions can give rise to an inference of joint tenancy ownership, an inference we deem less probable and natural, nevertheless, it was still within the exclusive province of the trial court to determine which of the two inferences should be drawn from the evidence. (*Schuster* v. *Schuster* (1957) 150 Cal.App.2d 650, 653-654 [310 P.2d 481].)

Other significant factors add their impact. The properties were purchased with community funds. While, as we have said, this evidence alone will not rebut the presumption, on the other hand, it is not forever stripped of evidentiary value. It can be properly considered with other relevant evidence and, thus considered, acquires a significance in the case. (See *Bowman* v. *Bowman, supra,* 149 Cal. App.2d 773, 776.) In addition, the plaintiff never had any discussions with anyone relating to how title to the properties was to be taken. He apparently did not appreciate the differences between the two different tenures here involved and, as in the *Bowman* case, even at the trial, confessed ignorance of the characteristics of a joint tenancy. (See *Bowman* v. *Bowman, supra,* p. 777.) Indeed, the instant case is very similar to the *Bowman* case where this court held there was sufficient evidence in the conduct of the spouses to support the finding that they intended to continue to hold their property as community property.

We are presented here with the everyday situation of a husband and wife purchasing property with community funds and taking title as joint tenants. While we do not have here, as in *Bowman,* evidence on the precise motive, it is common knowledge that this form of ownership is adopted in order to provide for automatic and inexpensive survivorship on death. When the conduct of the spouses shows that they regard the property as their marital property and where, as here, it appears that they never actually understood characteristics and effect of a joint tenancy, there is a sound basis for a trier of fact to conclude that they never intended to change the character of their property. (*Jenkins* v. *Jenkins* (1957) 147 Cal.App.2d 527 [305 P.2d 289] ; see 14 Stan.L.Rev. 87.) As the court said in the *Jenkins* case, "[i]t frequently happens that they have no intention of abandoning community ownership and do not understand that placing the title in joint tenancy would affect the change of ownership or would serve any purpose other than to avoid the necessity of proceedings in probate. If the evidence is sufficient to convince the court that the parties had no agreement and no intention to alter the community character of the property it may properly be determined that it remains community property notwithstanding the fact that title was knowingly taken in joint tenancy." (147 Cal.App.2d at p. 529.) In the instant matter, we are satisfied that the court's finding that the two parcels of real

property remained community property is supported by the evidence and the reasonable inferences therefrom.

*Was the award of alimony excessive?*

No. ■ The trial court awarded the defendant $100 per month as alimony until further order of court. Such allowance is to be made "having regard for the circumstances of the respective parties." (Civ. Code, § 139.) It rests within the discretion of the trial court and will be interfered with on appeal only where there is an abuse of discretion. (*Melny* v. *Melny* (1949) 90 Cal.App.2d 672, 679 [203 P.2d 588].)

The plaintiff was an estimator for a glass company and had been steadily employed for a number of years. For the year 1960 (the trial began December 22, 1960) his total gross income was $7,400. At the trial he claimed average monthly expenses of approximately $502. He argues here that, after deducting taxes withheld at the source, his expenses equal his income. The defendant operated a dance studio. During 1956 her net income therefrom was $2,584; in 1957, $3,960; in 1958, $6,053; in 1959, $4,613; and in the first six months of 1960 only $814. She estimated her monthly living expenses at the time of the trial to be $450.

Plaintiff accuses the defendant with having deliberately contrived a decrease in income after the instant action was commenced. However, she testified that the volume of her dance business decreased because certain classes became smaller, other classes lost pupils as a result of dancing lessons being given by schools, recreation departments and civic organizations, and as a whole certain groups of pupils lost interest in dancing classes. As a result, the volume of merchandise sold to pupils also decreased. Finally, the defendant lost additional outside income because she didn't have the physical strength to do the work involved and also operate her studio. Apparently the trial court accepted this explanation. We are obliged to consider the above evidence in the light favorable to defendant. The plaintiff also challenges certain items of the defendant's personal expenses set forth in the written interrogatories proposed by plaintiff and introduced into evidence. It is clear to us that these were weighed and evaluated by the trial court.

■ The court found that the defendant wife had insufficient money to support herself and that the plaintiff husband was able to pay a reasonable amount for support which the

court fixed at the sum of $100. It is obvious therefore that the court felt that the defendant had some but not enough money to support herself and, while not allowing the full $450 per month expenses claimed by defendant, concluded that her needs would be met if her income were supplemented at the rate of $1,200 per year. At the same time, the court either disbelieved the plaintiff's list of his own personal expenses or concluded that the plaintiff's obligation to contribute to the support of his wife had clear priority over many of the items. After deducting the above alimony, the plaintiff would be left with a gross income of $6,200 per year. The parties were married for more than 22 years. We can find no abuse of discretion in the conclusion reached by the court below.

*Was the award of attorneys' fees excessive?*

No. Here plaintiff attacks the court's order for additional counsel fees of $600, plaintiff having theretofore paid defendant's attorneys $500. Thus, in effect, it is claimed that the total fees of $1,100 were excessive.

 The amount of an award for counsel fees rests largely in the discretion of the trial court and an order awarding such fees will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Frazier* v. *Frazier* (1953) 115 Cal.App.2d 560, 562 [252 P.2d 698]; *Pope* v. *Pope* (1951) 107 Cal.App.2d 537, 539 [237 P.2d 312].) As said in the latter case ''[i]n determining the amount of a reasonable fee the trial court is permitted to consider various factors: The nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and of the attorneys selected by the wife, are some of the relevant matters to be considered.''

 The record shows substantial property involved in the instant litigation: Two parcels of real property valued at $35,200; two policies of life insurance valued at approximately $4,000; bank accounts in the defendant's name totalling $1,800; a personal injury claim of the plaintiff for which he received $3,000 in cash; and several additional items of undetermined value which were divided between the parties. The total amount in controversy appears to be in excess of $44,000. The trial of the case occupied two full days and four half days, or in all four trial days. The

reporter's transcript of the proceedings totals 369 pages. A number of issues were raised at the trial, prominent among which was the character of the two parcels of realty. Defendant's counsel were successful in establishing the community character of such property and in resisting plaintiff's claim that it was joint tenancy property. As a result, instead of being compelled to accept one-half the total value or $17,600 (less expenses in the event of a partition sale), defendant was awarded the Berkeley property valued at $25,000 or $7,400 more in property value. We have already adverted to the evidence bearing upon the circumstances of the parties. In the light of all relevant factors, we cannot say that the court abused its discretion.

*Was it proper for the court to impose a lien on the property awarded plaintiff?*

No. Plaintiff was awarded, *inter alia,* the Albany property. However, the court declared a lien upon such property "to secure payment to defendant and cross-complainant of alimony. . . ." ▆▆▆▆ It is settled that a court may in its discretion require such security. (Civ. Code, §140; *Loomis* v. *Loomis* (1960) 181 Cal.App.2d 345, 347 [5 Cal.Rptr. 550].) Nevertheless as this court held in *Wilson* v. *Wilson* (1951) 104 Cal.App.2d 167, 174 [231 P.2d 128], the above statute did not confer upon the court below a power to require security "out of a clear sky." In *Wilson* the trial court ordered monthly alimony increased from $600 to $1,000 and, after finding that the wife had extreme difficulty in the past in collecting her alimony, required the husband to post security in the sum of $24,000 to guarantee payment in the future. Mr. Justice Bray there said: "The court had the power to make such requirement, even though no notice of intention to apply therefor was given. Section 140 of the Civil Code gives the court this power, as incidental to the granting of alimony. This, however, does not give the court the power to make such order out of a clear sky, without any request at the hearing therefor and without any intimation that the making of such order was being considered. Before such an order can be made the court must give the defendant an opportunity to make a showing as to why security should not be ordered. The record shows no mention of security until the order was made." (104 Cal. App.2d at p. 174.)

What was said in *Wilson* is applicable here. The record

before us shows no request or motion for security and no mention of security of any kind, let alone that which would involve a lien upon the plaintiff's property. Nor, as in *Wilson*, was there any finding of past difficulty in collecting alimony. Clearly the lien employed as a security device would directly affect the marketability of the plaintiff's title. It could have harsh results (cf. *Loomis* v. *Loomis*, *supra*, in respect to lien on husband's separate property) and upon a consideration by the court of all the circumstances of the parties, might not be found suitable or equitable. We think that under all the circumstances the plaintiff should have an opportunity to be heard on whether security should be required of him.

Defendant contends that the *Wilson* case should not control here, since the only issue in *Wilson* was an increase of alimony, whereas in the instant case, the court below had before it the entire disposition of the community property. Such facts create no distinction in principle. In each case, the payment of alimony is required to be secured without giving the party obligated any advance warning of such requirement or any opportunity to show that it should not be ordered.

*Was it prejudicial error for the court to receive in evidence copies of the plaintiff's income tax returns?*

No. ▮▮▮▮ During the cross-examination of the plaintiff and over his objection, the defendant introduced in evidence copies of the 1946 and 1947 federal income tax returns of both parties.[1] The purpose in offering such evidence was to show that the Albany property (the Berkeley property was acquired in 1950) was regarded by plaintiff as community in character.[2]

Plaintiff's objection was that the evidence offered was "incompetent, irrelevant and immaterial; violating a privilege, and no foundation laid. . . ." We find no merit in the last ground since the record shows that the plaintiff identified

---

[1] On appeal plaintiff refers to these inadvertently as returns for the years 1947 and 1948.

[2] On the husband's returns, the adjusted gross income was split with the notation "Community Property—½ to Wife's return." On the wife's returns, the above one-half portion was taken into account with the notation "Community Property—½ from Husband's return." The parties thus following the common practice of income splitting permissible in community property states prior to the enactment in 1948 of federal statutes which thereafter permitted such income splitting by spouses in noncommunity property as well as community property states.

the copies of his returns, and by fair inference, his wife's also. Plaintiff's chief attack on the court's action is based on the ground that the returns were privileged, citing *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621]. The *Webb* case held that copies of federal and state income tax returns were privileged and their disclosure by the taxpayers could not be compelled by court order. The opinion assumed that the returns would be admissible if not privileged. In the instant case, the retained copies of the returns were apparently in the possession of and available to the defendant who offered them. The issue before the trial court was therefore not the discovery or disclosure of the returns but their admissibility. It has been held that such returns are admissible on the theory that they contained admissions against interest. (*Balkema* v. *Deiches* (1949) 90 Cal.App.2d 427, 430 [202 P.2d 1068]; *Heck* v. *Heck* (1944) 63 Cal.App.2d 470, 475 [147 P.2d 110]; see also *Estate of Neilson* (1962) 57 Cal.2d 733, 744-746 [22 Cal.Rptr. 1, 371 P.2d 745]; *Shenson* v. *Shenson* (1954) 124 Cal.App.2d 747, 752 [269 P.2d 170, 270 P.2d 896]; 31 So.Cal.L.Rev. 211, 215-216.)

We doubt however that the returns contained statements relevant to the issues which could have been construed as admissions against interest. The notations on the returns (see footnote 2 *ante*) referred only to the splitting of income, all of which was obviously community in character, but none of the items of which appear to us to be income derived from the Albany property.

Nevertheless, assuming that the returns were irrelevant and therefore inadmissible, we fail to see how their admission in evidence prejudiced the plaintiff, especially in a nonjury case. The trial judge, in admitting the evidence ''for whatever it is worth'' does not seem to have been impressed with its probative value. The evidence related only to the Albany property. Finally, as we have pointed out, there is other substantial evidence supporting the court's finding that both parcels of property were community property.

*Was there error in the order of proof requested by the trial court?*

No. At the outset of the trial the plaintiff called the defendant under the provisions of section 2055 of the Code of Civil Procedure. The defendant objected upon the ground that it was ''incompetent, irrelevant and immaterial . . . and

no prima facie case.'' The court then stated that it would prefer to proceed with the plaintiff first, with the opportunity to plaintiff to then call the defendant, for the reason that it would make for a more orderly presentation. Counsel for plaintiff made no objection but thereupon called the plaintiff to the stand, thereafter calling the defendant as an adverse witness.

It was within the sound discretion of the court to regulate the order of proof. (Code Civ. Proc., § 2042.) We find no abuse of discretion in the above proceedings. While the defendant seems to have been under the impression that the plaintiff was first required to establish a prima facie case before calling the defendant, the court's action was not based on this reason but was prompted only by a desire to have an orderly presentation. Furthermore, as we view the record, the court merely expressed a preference to which the plaintiff agreed without objection.

In addition to raising the foregoing questions, plaintiff objects to the court's finding that the proceeds of the compromise settlement of his claim for personal injuries were community property. The plaintiff was injured in an automobile accident on January 1, 1959, and thus after the enactment in 1957 of section 163.5 of the Civil Code.[3] He received $3,000 on the settlement of this claim. From these moneys he made payments on a truck and trailer, trading in at the same time a Buick automobile apparently owned by the parties. The court found the settlement proceeds and the truck and trailer to be the community property of the parties and awarded all of such property to the plaintiff. Without citation of any authority other than the above statute, plaintiff contends that proceeds of the settlement were his separate property. Plaintiff however does not press this contention and on oral argument waived a determination of the question in the event we uphold the trial court's finding in respect to the real property. We therefore deem it unnecessary to consider this point further. [4]

---

[3]Section 163.5 provides as follows: ''All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person.''

[4]Apparently no reported California case has dealt with the question whether money received in settlement of a claim for personal injuries constitutes ''damages . . . awarded'' within the terms of the above section. Law review writers have answered the question both ways (45 Cal. L.Rev. 780; 9 Hastings L.J. 304).

*Was the award of attorneys' fees and costs on appeal excessive?* (*No. 20494.*)

No. After the plaintiff filed his notice of appeal in No. 20199, the defendant moved for an order directing plaintiff to pay her costs and attorneys' fees in connection with such appeal. Upon the hearing of the motion before a different judge, the court awarded defendant $250 as attorneys' fees on appeal and $200 as partial costs on appeal, the balance of such costs to be determined upon the filing of a cost bill.

Defendant's affidavit in support of her above motion stated that plaintiff had a net monthly income in excess of $500 and was therefore well able to pay such fees and costs. Plaintiff's affidavit in opposition stated that his monthly gross income was $620, his monthly net income after taxes withheld was $499 and that itemized monthly expenses totalled $486.16. The plaintiff also introduced in evidence certain of the written interrogatories proposed to defendant and her answers thereto which, as we have already set forth, dealt with the defendant's dance business income. There seems to have been no substantial dispute over plaintiff's gross income. As we have said earlier, the court could have disbelieved his statement of expenses or felt that the award of costs and fees to the defendant took priority over some of them. Indeed, some of the items appear to be not living expenses but monthly payments on capital items, such as the plaintiff's truck and trailer, and may have very well been excluded by the trial court for that reason. We have already dealt with defendant's answers to the interrogatories in connection with another issue. Among other things, they showed a decrease in her dance business income, with a net income of only $814.83 for the first six months of 1960. The motion here involved was heard in August 1961. The interlocutory judgment was entered in March 1961. Apparently the judge hearing the motion concluded that the foregoing evidence of the defendant's circumstances was as relevant to the issue of her need at one time as the other and considered that it was in some degree supportive of the allegation in her affidavit that she lacked sufficient funds to defray the expenses of her appeal. We observe that it was the husband who commenced the instant action and took the present appeal. It was within the discretion of the trial court to award defendant such costs and attorneys' fees as may be reasonably necessary to enable her to resist the

instant appeal. (Civ. Code, § 137.3; *Kopasz* v. *Kopasz* (1949) 34 Cal.2d 423 [210 P.2d 846].) We find no abuse of discretion in the making of the above order.

That portion of the judgment in appeal No. 20199 declaring a lien upon the real property awarded to plaintiff and located at 807 Evelyn Street, Albany, California, to secure the payment of alimony to defendant is reversed, without prejudice to a redetermination of the matter of requiring such or other proper security upon giving plaintiff an opportunity to be heard thereon. In all other respects, the judgment in appeal No. 20199 is affirmed. The order for additional counsel fees dated March 28, 1961, in appeal No. 20199 is affirmed. The order for attorneys' fees and costs on appeal in appeal No. 20494 is affirmed. Defendant will recover costs on both appeals.

Bray, P. J., and Molinari, J., concurred.