[Civ. No. 15458.   First Dist., Div. Two.   Aug. 10, 1953.]

FRANCES BARR, Appellant, v. GEORGE BARR, Respondent.

Coffey & Velasquez for Appellant.

Paolini & Paolini and Fahey, Castagnetto & Gallen for Respondent.

DOOLING, J.—Appellant, hereinafter called the mother, appeals from an order modifying her final decree of divorce from respondent, hereinafter called the father. In the original decree the mother was awarded the custody of the parties' only son. By the order appealed from, the father is awarded custody with rights of visitation in the mother. Both parents have remarried and at the time of the hearing the boy was 8 years of age.

The sole complaint on appeal is that the trial judge prejudged the issue and by reason thereof appellant was prevented from having a fair trial.

The motion for change of custody was presented to the trial court upon conflicting affidavits, the report of a domestic relations investigator for the court, oral testimony and an interview by the judge with the boy in his chambers.

At the time the oral hearing commenced the judge had

before him the investigator's report. At the outset of the hearing counsel for the father suggested that he would like to present the evidence of the father and his present wife to supplement matters in the investigator's report which the investigator "could not have observed."

The judge, addressing himself to this statement of the father's attorney, asked him in what way he felt the report to be incorrect or not complete, saying: "You couldn't make a better showing than she has made for you, and I am in accord with it, in agreement with it. . . . My own thought is that in all cases of this type, that a boy is much better off with his father, assuming he is a fit and proper person, as in this case is very clearly indicated than he would be with his mother. A boy, in my opinion should be with the father rather than the mother because I have found in a great many instances that they are inclined to become tied to their mother's apron strings to a point where it isn't for the best interests of the boy. So there isn't any showing that you can make here that is going to satisfy me any more than I am now satisfied that this man and his present wife have a wonderful home for him, and are fit and proper people to have him."

This statement was addressed to the offer of additional proof by the *father's* attorney and its effect was to suggest to him that after reading the investigator's report the judge felt that the burden of going forward with the proof was on the mother.

When the mother's attorney stated to the court that he believed he could make a countershowing on the character of the father's home, the following occurred:

"What is your thought on it? What is your opinion? That I am wrong? . . . How wrong am I, 5 per cent, 10 per cent? How wrong am I?"

We can find no prejudice in this when taken in connection with what immediately followed. Counsel for the mother replied: "Well, I believe that the boy's mind is being poisoned." The judge replied: "I haven't reached that point yet. I am simply saying at this moment, nothing else—nothing derogatory to the mother . . . I am simply finding at this time that this man . . . offers a home which is ideal in every respect." To this counsel for the mother answered: "As to the home, yes, your Honor; that's perfectly all right."

Having conceded in the trial court that the father's home was a proper one for the child, appellant can hardly claim injury from any prejudging of that issue. Appellant does

assert, however, that she was prevented by the court from showing that the father's present wife was poisoning the boy's mind. The record does not bear out this assertion. Before any evidence was introduced on this subject, the matter was commented on by the court in the following language: "The only interest that I have . . . is not the mother, nor is it the father . . . I am interested in the welfare of this child. If he's being influenced by his father contrary to what he should do, so far as the mother is concerned, then I'd be very disappointed in him . . . if I found that the mother was influencing the boy against the father, or the father against the mother, I wouldn't tolerate it for a moment."

The only evidence on this subject presented by the mother was given by her in the following passage in which she was interrogated by the judge:

"The Court: Do you feel that his father is influencing him against you?

"The Plaintiff: No, I feel his wife is.

"The Court: Well, you have no reason to say that.

"The Plaintiff: He has told me so.

"The Court: Told you what?

"The Plaintiff: The things that she has said, especially about my mother. She doesn't like my mother; she tries to turn him against his grandmother."

The court then passed on to other matters and counsel for the mother asked no questions of her then or later directed to this particular matter. There is no basis in the record for the complaint that the judge prevented whatever showing the mother desired to make, or indeed that she had any further evidence which she wanted to produce, on this subject.

Complaint is also made that the court refused to hear evidence on the question of the stepmother's fitness as it might be affected by the fact that her daughter by a former marriage was not living with her. The record shows the following:

"Q. How long was your daughter with you?

. . . . . . . . . . . . .

"The Witness: She left a few years ago; four and a half years ago.

"Mr. Paolini: Your Honor, I can't see the relevancy——

"The Court: Unless you've got something on your mind, Counsel, you'd better desist from this line of questioning.

"Mr. Dalo: All right, that's all."

This amounted to no more than a statement by the court that unless counsel could show the relevancy ("unless you've got something on your mind") the objection was sustained.

Counsel neither suggested the relevancy of the inquiry, nor made an offer of proof. Instead he acquiesced in the ruling.

Complaint is also made of the refusal to hear two witnesses "on the question of the cleanliness of the boy." The court suggested a stipulation that they would testify that from their observations the boy was neat and clean. This stipulation was made without objection.

At the close of the oral hearing the parties agreed that the judge should see the boy in his chambers the next day. No transcript of this interview was made, nor did counsel ask to have a reporter present. The order appealed from was made seven days later. Since counsel for appellant limits the attack on the order to the grounds herein considered there is no reason to discuss the sufficiency of the evidence, further than to state that the boy was spending considerable portions of each week in the father's home which caused the investigator to report: "This certainly isn't the best plan having the boy go three different times a week with his father, as he is certainly not receiving sufficient stability in either home."

In *Weil* v. *Weil,* 37 Cal.2d 770 at pages 784-786 [236 P.2d 159], the Supreme Court reviewed the cases (including *Pratt* v. *Pratt,* 141 Cal. 247 [74 P. 742], and *Rosenfield* v. *Vosper,* 45 Cal.App.2d 365 [114 P.2d 29], upon which appellant relies) dealing with the asserted prejudging of issues by the trial judge and concluded on page 786:

"Each of the cited cases in which trial judges have been found guilty of misconduct . . . has differed substantially from the others; none of them can be a controlling precedent in a new situation in which new fact questions are presented."

We have examined the transcript with particular care to find any instance where appellant had not been permitted to develop any relevant facts and we have found no such instance. That the judge did not in fact prejudge the case is indicated by his refusal to decide the matter until he had talked to the boy himself, and we have pointed out no record was made or requested of that interview so that we have no knowledge of what it developed. On the whole record we cannot hold that any prejudice is disclosed which would justify a reversal.

Order affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied September 8, 1953, and appellant's petition for a hearing by the Supreme Court was denied October 8, 1953.