[Civ. No. 23917. Second Dist., Div. Three. Mar. 3, 1960.]

MAY GARY, Appellant, v. PEARL EDNA AVERY et al., Respondents.

A. J. O'Connor for Appellant.

Martin F. Shakley for Respondents.

BISHOP, J. pro tem.*—The plaintiff appeals from the judgment, decreeing that she and the defendant Pearl Edna Avery were joint tenants of property that plaintiff claimed was her own, her principal contention being that the trial judge violated the principle that a trier of fact should not make up his mind until the evidence is all in and the issue submitted to him for decision. We are not persuaded that the trial judge failed to live up to the principle nor that any reason exists for reversing the judgment.

The issues, made by the pleadings, were not complicated. They center around a joint tenancy grant deed which appeared to have been executed by May Gary, making her and Pearl Edna Avery joint tenants of certain real property. The plaintiff alleged, first, that she had never at any time signed the instrument; that the signature purported to be hers "is a forgery and is false and spurious." Furthermore, at no time did she authorize any person to sign the deed on her behalf. In her second cause of action she omits the references to the forged nature of the deed, but adds that she never actually or constructively delivered the deed, nor did she ever intend to. Her third cause of action alleges that not only the defendant Pearl Edna Avery, but also Pearl's husband, Karl E. Avery, claims some interest in the property decribed, but, of course, without any right.

The defendant, Karl E. Avery, joins with his wife in denying that there was a forgery of plaintiff's name, and

*Assigned by Chairman of Judicial Council.

her other allegations. In a cross-complaint Pearl Edna alleges that the plaintiff-cross-defendant conveyed the land to her in joint tenancy. In no way does her husband claim any interest in the land.

Negatively, we note, there is no pleading on plaintiff's part that she was led to sign the deed by anyone's misrepresentation or undue influence, and no suggestion is made that a lawyer had prepared the deed and advised her as to its effect, while representing Pearl Edna unbeknownst to her (the plaintiff).

At the trial the plaintiff, as a witness, answered categorically "No" to a series of questions respecting the deed; she did not go to Pearl Edna's house to sign a joint tenancy deed; she did not sign one; she did not deliver one; she did not authorize Pearl Edna to record one. She did sign a will.

On behalf of the defendants a handwriting expert testified that the signature on the deed was that of the person—admittedly the plaintiff—who signed the will that was in evidence, and who signed a letter introduced by the plaintiff and which she testified she wrote. Pearl Edna took the stand and testified that plaintiff signed the deed in question. Mr. Steele, long time a lawyer and friend of the Averys known to be so by the plaintiff, and who had been asked by Pearl Edna, at plaintiff's request, to prepare the deed, and the will, testified that he explained and read the deed to the plaintiff; that she signed the deed in his presence. She indicated that she knew what a joint tenancy deed was, because she had had one with her husband, now deceased. The defendant Karl Avery also stated, as a witness, that the plaintiff had signed the deed.

It was during the cross-examination of Karl that the hassle took place that plaintiff's counsel hopes will secure her a reversal. At the taking of his wife's deposition, Karl had stated that he would testify in substance, as his wife had. Based on this, plaintiff's counsel read to Karl some answers that his wife had given. The trial judge interrupted, after a bit, then this exchange of pleasantries took place: "MR. O'CONNOR: This is my only purpose, Judge. If there was never any intention by the grantor to pass on interest by that joint tenancy——

"THE COURT: I believe there was an intention on the part of the grantor to execute and deliver, and I believe she did execute and deliver, although the grantor alleges that she never executed and alleges that the deed was a forgery, and

alleges that she never delivered. But we have title [*sic*] from the man who drew the document, acknowledged the document, that it was executed by your client. We have the testimony from the man who drew the document that he explained the nature of the document to her and made the delivery, and that testimony comes from a member of our bar.

"MR. O'CONNOR: Well, Judge, you framed and expressed and formed an opinion of the case before it is finally submitted to you, so I am foreclosed entirely——

"THE COURT: No, I am just explaining what has been testified to. And I wondered what was to be gained by going into this.

"MR. O'CONNOR: Well, this is what is to be gained, that if it was the understanding of the grantor and the grantees that this deed was merely to be testamentary in character, that it would carry no title during their lifetimes, then, your Honor, there was never any intention to pass any interest in this property at the time it was executed on June 10th of '49.

"THE COURT: All right, you may proceed with your questioning, but that isn't what the facts as testified in this court bear out as of right now.

"MR. O'CONNOR: Well, Judge, I——

"THE COURT: That is not what the facts bear out.

"MR. O'CONNOR: With all due respect to your Honor——

"THE COURT: Now, I am just reviewing the facts that have been brought out. Now, if you can tear down the testimony of the member of the Bar who has testified, and the other witnesses, you may so do. But that is the status of the case right now.

"MR. O'CONNOR: With deference to the Court, I submit that your Honor has formed and expressed an opinion in this record with reference to the very essence of this case.

"THE COURT: No, sir, I am still permitting you to continue. If you can tear it down, you go ahead.

"MR. O'CONNOR: I assign it as prejudicial misconduct, your Honor, and I ask for a mistrial at this time.

"THE COURT: No, sir, it will be denied, because I am not denying you the opportunity of presenting any additional testimony.

"MR. O'CONNOR: It becomes a futile gesture, your Honor, if your Honor has already formed and expressed an opinion.

"THE COURT: That is your conclusion. You may proceed and call any witness you have to call, or proceed with your

examination. I just wanted to know what you were attempting to bring out by this witness.

"MR. O'CONNOR: And I attempted to explain it, but I have succeeded only in arousing the indignation of the Court.

"THE COURT: I am not angry with anyone here, and most particularly not at you or your client, because, I think your client is a very sweet lady and you a good lawyer.

"MR. O'CONNOR: Thank you, your Honor. But I submit the case, your Honor.

"THE COURT: You do not wish to cross-examine this witness any further or call any further witnesses?"

"MR. O'CONNOR: No, not in view of your Honor's remark, your Honor.

"THE COURT: I am telling you that you are wide open. But if you do not choose to put on any further testimony, that is your election as the attorney for the plaintiff. I am not barring you from presenting any testimony whatsoever.

"MR. O'CONNOR: I do not want to engage in any futile or idle act, Judge.

"THE COURT: It is not a futile or idle act.

"MR. O'CONNOR: I concede it so, Judge.

"THE COURT: That is your opinion. I am telling you my mind is wide open. If you have additional evidence, go ahead and present it.

"MR. O'CONNOR: I have, but I don't care to develop it, Judge.

"THE COURT: That is your election.

"MR. O'CONNOR: That's correct, and I have made a motion for a mistrial based upon your Honor's statement that you have formed and expressed an opinion on the vital issue in this case, the only issue.

"THE COURT: I was just telling you the status of the testimony with reference to this matter. And was inquiring as to what you were going to attempt to prove by this witness. Now, if you do not wish to cross-examine this witness any further, that is your privilege. If you do not wish to call any further witnesses, that is your privilege. But your motion for a mistrial is denied. Now, do you wish to proceed any further?

"MR. O'CONNOR: No, your Honor."

We are reminded that section 611, Code of Civil Procedure, requires that separating jurors are to be admonished not to discuss with any other person any subject of the trial, and "that it is their duty not to form or express an opinion thereon until the case is finally submitted to them." [■■ We

are agreed that a trial judge should not form an opinion on any issue in a case on trial before him, until it is submitted to him. (*Webber* v. *Webber* (1948), 33 Cal.2d 153, 158 [199 P.2d 934, 938]; *Rosenfield* v. *Vosper* (1941), 45 Cal.App.2d 365, 371-372 [144 P.2d 29, 33].) But even jurors are commonly advised in the terms of section 1847, Code of Civil Procedure: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or by contradictory evidence; and the jury are the exclusive judges of his credibility." We opine that neither a juror nor a judge violates the principle stated in section 611 if, as a witness leaves the stand, the trier of fact says to himself: "That fellow is not to be believed." Such a conclusion does not mean that a verdict has been reached as to the fact at issue, but only that the acceptance of the fact is not to be established by that witness' testimony.

 The duty of a trial judge differs from that of a juror with respect to expressing an opinion on any subject of the case before its submission. Some trial judges advise their young associates that they can save themselves reversals by keeping their mouths shut; and so they can. But avoiding reversals should not be sought at the expense of a fair trial, and often the latter requires an expression of the conclusions of the trial judge up to the moment, in order that counsel may be advised what course to chart. Such expressions *may* indicate that the judge's mind is closed, further evidence will not be given any effect, but that is not necessarily the inference always to be drawn from the expressions of present impressions.

Our Supreme Court, in *Weil* v. *Weil* (1951), 37 Cal.2d 770, 786 [236 P.2d 159, 167], after reviewing *Webber* v. *Webber,* *Rosenfield* v. *Vosper,* which we have cited, and other cases dealing with the same matter, summed up the problem in these words: "Each of the cited cases in which trial judges have been found guilty of misconduct (see also *Pratt* v. *Pratt,* 141 Cal. 247 [74 P. 742]; *Bell* v. *United States,* 9 F.2d 820) has differed substantially from the others; none of them can be a controlling precedent in a new situation in which new fact questions are presented. Differences in the nature of the litigation, the particular comments or conduct of the trial judge, the scope and reliability of affidavits by parties and attorneys, and the state of the evidence at the trial make it essential that each case turn upon its own facts."

■ We do not find in the record of this case any reason to conclude that the trial judge has closed his mind as to any issue in the case. It does appear that he had no, or little, faith in the credibility of the plaintiff as a witness, an estimate that might well be based upon her appearance on the stand, an appearance which is brought to us by the opening brief on her behalf which describes her as "sickly and feeble."

■ The contention that the attorney who prepared the deed "was acting in a dual capacity without the knowledge or consent of plaintiff," founders upon the evidence, which was clearly sufficient to warrant the conclusion (there was no issue created by the pleadings and so no formal finding) that she had full knowledge of the "dual" relationship; that she knew Mr. Steele had long been a friend of and attorney for her niece and nephew; that she asked her niece to get him to prepare her will and the deed and was provoked at her niece because she had delayed seeking him about the matter.

The judgment is affirmed.

Vallée, Acting P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 16, 1960, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1960.