[Civ. No. 21848. First Dist., Div. One. Apr. 14, 1965.]

MARGARET M. HANSEN, Plaintiff and Appellant, v. WILLIAM M. HANSEN, Defendant and Respondent.

576

John R. Miilu and Robert A. Kaiser for Plaintiff and Appellant.

King & Richards and George King for Defendant and Respondent.

SIMS, J.—Plaintiff has appealed from the whole of a judgment which granted her an interlocutory decree of divorce on the grounds of defendant's extreme cruelty, provided for the custody and support of the minor daughter of the parties, declared certain items of property joint tenancy property, disposed specifically of certain insurance policies and other items of community property, awarded plaintiff a fixed sum payable in monthly installments as part of the distribution of community assets, denied her alimony, and granted her attorney's fees. Her purported appeal from the denial of her motion for new trial must be dismissed as it is not an appealable order, although its propriety may be reviewed on the

appeal from the judgment. (*People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 351 [19 Cal.Rptr. 473, 369 P.2d 1] ; *Neyens* v. *Sellnow* (1962) 202 Cal.App.2d 745, 746 [21 Cal.Rptr. 151] ; *Di Grandi* v. *Di Grandi* (1951) 102 Cal.App.2d 442, 443 [227 P.2d 841] ; Code Civ. Proc., § 963.)

Her attack on the judgment before this court, however, is limited to those portions thereof which denied her alimony and which declared that certain items of property were held by the parties in joint tenancy. In support of this attack she alleges that the trial judge manifested such prejudice that it was impossible for her to receive a fair and impartial trial on the merits.

### Motion to Dismiss

Respondent has moved to dismiss the appeal by motion, which after due notice was presented, argued, and submitted in connection with the hearing of the appeal. It is contended that by levies of a writ of execution appellant has accepted the fruits of her judgment and thereby is precluded from further prosecuting the appeal. (See *Wilson* v. *Wilson* (1958) 159 Cal.App.2d 330, 334 [323 P.2d 1017] ; and 3 Witkin, Cal. Procedure (1954) Appeal, § 41, p. 2189.) In the cited case the appeal was dismissed because it appeared that the defendant failed to appeal from, and in effect accepted, the portions of the judgment which awarded him an automobile and which provided that the plaintiff should discharge and hold him harmless from a $20,000 obligation. (See also *Preluzsky* v. *Pacific Co-operative Cafeteria Co.* (1925) 195 Cal. 290, 293 [232 P. 970] ; *Weil* v. *Superior Court* (1950) 97 Cal.App.2d 373, 375 [217 P.2d 975] ; *Weil* v. *Weil* (1950) 97 Cal.App.2d 378, 379 [217 P.2d 979] ; and *Swallers* v. *Swallers* (1948) 89 Cal.App.2d 458, 462 [201 P.2d 23].) The same policy dictates that where there is an attempted appeal from a portion of a judgment which contains provisions which are interdependent, an appellate court cannot properly reverse the judgment as to the part complained of and permit the remainder to stand. (*Wilson* v. *Wilson, supra,* p. 333 ; *Blache* v. *Blache* (1951) 37 Cal.2d 531, 538 [233 P.2d 547] ; and see *American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 216-219 [246 P.2d 935].)

On the other hand, it is recognized in the *Wilson* case, *supra,* on which respondent relies, that the rule first stated is qualified and depends on the provisions of the judgment and

the nature of the appeal. It is generally stated "that the right of appeal is not forfeited unless the acts of an appellant which are relied upon are such as to clearly and unmistakably show acquiescence and that such acquiescence must be unconditional, voluntary and absolute. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 214, 215 [259 P.2d 656].)" (*Wilson* v. *Wilson, supra,* p. 333; and see in addition to the case cited, *Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 509 [4 Cal.Rptr. 618]; and *Steele* v. *Steele* (1954) 129 Cal.App.2d 389, 390 [277 P.2d 56].)

■ More particularly where different portions of the judgment are severable a party, by accepting one portion, is not estopped to attack other and severable portions thereof on appeal. (*Wilson* v. *Wilson, supra,* p. 333; 3 Witkin, Cal. Procedure, Appeal, § 43, p. 2191; *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d 656]; *Mears* v. *Mears, supra,* p. 509; *Cohen* v. *Cohen* (1951) 102 Cal.App.2d 624, 625 [228 P.2d 54]; *Di Grandi* v. *Di Grandi, supra,* 102 Cal.App.2d 442, 444-448; *Harrold* v. *Harrold* (1950) 100 Cal.App.2d 601, 604 [224 P.2d 66].) ■ If the appeal is only from a portion of a judgment in which the issues are severable, the portions from which no appeal is taken may become final and beyond the scope of review of the appellate court (*Blum* v. *City & County of San Francisco* (1962) 200 Cal.App.2d 639 [19 Cal. Rptr. 574]; and see concurring opinion of Traynor, J., *Harrold* v. *Harrold,* 43 Cal.2d 77 at pp. 88-90 [271 P.2d 489]); and so where the judgment clearly establishes the appellant's right to recover but the amount is less than he demands, he may accept it and nevertheless appeal, claiming the larger recovery. (3 Witkin, Cal. Procedure, Appeal, § 42, p. 2190; *Blum* v. *City & County of San Francisco, supra,* p. 650, distinguishing *Wilson* v. *Wilson, supra; Mears* v. *Mears, supra,* at p. 509; *Di Grandi* v. *Di Grandi, supra,* p. 444.)

■ "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.]" (*American Enterprise, Inc.* v. *Van Winkle, supra,* 39 Cal.2d 210, 217; *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 214-215; *Blum* v. *City & County of San Francisco, supra,* 200 Cal.App.2d 639, 648; *Mears* v. *Mears,* 180 Cal.App.2d 484, 509.)

As noted, in this case the notice of appeal was from the

whole of the judgment. █ Although, on the one hand, the notice of appeal may limit the points the appellant can present (*Glassco* v. *El Sereno Country Club, Inc.* (1932) 217 Cal. 90, 92 [17 P.2d 703]), the appellant nevertheless may abandon an appeal from portions of a severable judgment by failing to assign error in respect of or otherwise discuss such portions. (See *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 501, 509 [21 Cal.Rptr. 75], and same case at 206 Cal.App.2d 307, recognizing right to final decree of divorce on remand;[1] *Whitney* v. *Whitney* (1958) 164 Cal.App.2d 577, 580 [330 P.2d 947]; and *Di Grandi* v. *Di Grandi, supra,* 102 Cal.App. 2d 442, 445.) The case last cited preserved and perpetuated portions of an intermediate and superseded opinion in the matter of the litigious Weils, which is pertinent to the issues herein.[2] The *Di Grandi* opinion, on its own and by the foregoing reference reviewed the earlier cases,[3] and concluded that the acceptance of attorneys' fees awarded for services in the lower court would not bar the appeal from other portions of the judgment. (102 Cal.App.2d at pp. 444-448.) In *Di Grandi* affidavits were filed waiving the right to appeal from the portions of the judgment awarding attorneys' fees. Since the case recognizes the doctrine of abandonment which is referred to above, and which was applied in the superseded *Weil* opinion, there would appear to be no necessity for such procedural maneuvers. █ The appeal herein should be treated as limited to an attack on those portions of the judgment in respect of which error has been assigned; to-wit, the determination that the property held in joint tenancy was such and not community property, and the failure to grant appellant any alimony.

[1] The general severability of the question of the termination of the marital status from that of the resolution of property and support rights is recognized in *Hull* v. *Superior Court* (1960) 54 Cal.2d 139, 146-147 [5 Cal.Rptr. 1, 352 P.2d 161].

[2] *Weil* v. *Weil* (1950 Cal.App.) 224 P.2d 460, superseded by *Weil* v. *Weil* (1951) 37 Cal.2d 770 [236 P.2d 159], which in affirming the judgment did not discuss the issue of whether or not the appellant had forfeited her right to appeal.

[3] *Storke* v. *Storke* (1901) 132 Cal. 349 [64 P. 578]; *McCaleb* v. *McCaleb* (1917) 32 Cal.App. 648 [163 P. 1045]; *Weil* v. *Superior Court* (1950) 97 Cal.App.2d 373 [217 P.2d 975]; *Weil* v. *Weil* (1950) 97 Cal. App.2d 378 [217 P.2d 979]; and *Swallers* v. *Swallers* (1948) 89 Cal. App.2d 458 [201 P.2d 23], which indicate that acceptance of alimony or attorney's fees would preclude further attack on the judgment; and *Browning* v. *Browning* (1929) 208 Cal. 518 [282 P. 503], which distinguished the cases which preceded it and denied a motion to dismiss the appeal.

The benefits which appellant has sought and received are reflected by her declaration for issuance of a writ of execution. Therein it is alleged that $850, with interest, was owing on an allowance of $950 attorney's fees; that $886.43 was owing on monthly payments of $150 each on account of the principal sum of $2,600 (which was awarded in lieu of her interest in certain community property) ; and that $1,050 was owing for seven months' child support at $150 per month. A writ of execution issued for a total sum of $2,847.93, including interest, and as a result of two levies $1,211.53 was collected from respondent.

The authorities referred to above indicate that the collection of attorney's fees and child support, which are concededly due, will not bar the appeal from other portions of the judgment. The fact that appellant seeks to have the property in joint tenancy declared to be community property and reapportioned between the parties would appear to be inconsistent however with her demand for and acceptance of payments on the sum which she has been awarded in lieu of her community interest in other property. These payments could only be received and retained on the premise that she accepted the division of the community property made by the court. (See *Wilson* v. *Wilson, supra*; *Swallers* v. *Swallers, supra,* 89 Cal. App.2d 458.) If, however, she would be entitled to the sums received in any event, her acceptance will not bar her attempts to secure more. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 215; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 509; *Cohen* v. *Cohen, supra,* 102 Cal.App.2d 624, 625; *Harrold* v. *Harrold, supra,* 100 Cal.App.2d 601, 605.) As the party securing the divorce on the grounds of extreme cruelty, she must be awarded more than one-half the community property. (*Cohen* v. *Cohen, supra,* at p. 625; *Harrold* v. *Harrold, supra,* at p. 608.) The fact that she has received some, or more accurately, payments in lieu of some, of the community property is not fatal. If a redetermination is necessary, the court can well take into account the property already awarded under provisions of the judgment which have not been attacked. (*Mears* v. *Mears, supra,* at p. 510.)

It is concluded that the motion to dismiss should be and it is hereby denied.

### Alleged Prejudice of the Court

Appellant asserts that the prejudice of the trial court made it impossible for her to receive a fair and impartial trial upon

the merits. As noted above, this prejudice apparently did not cloud the court's decision on the issues of which party should get the divorce, the custody and support of the child, the disposition of the property which was found to be community property, and the allowance of attorney's fees. In fact in submitting the case after the trial appellant's counsel offered to waive findings. She insists, however, that such prejudice tainted the court's decision in regard to alimony and the determination of the character of the property, particularly the former.

Three incidents which occurred during the course of a two-day trial are relied upon by appellant as demonstrating prejudice. The first, which is unreported, allegedly occurred during discussion in chambers prior to the commencement of the trial. No mention was made of any misconduct or prejudice thereafter until the argument on a motion for new trial. At that time the court acknowledged, "My recollection is I didn't want to hear a lot of sex talk."[4]

Secondly, it is asserted that impatience and a predetermined state of mind were shown by the following remarks of the judge: "You will remember in the office conference we tried to avoid a lot of this. Neither one of you wanted to avoid it. We'll have to go along. He may answer the question. The objection may be overruled."[5]

Finally, it is alleged that the court manifested irritation with appellant by the observation contained in the following:

[4]The colloquy on this subject was as follows: "MR. KAISER [attorney for appellant]: . . . the only thing that bothers me in the whole case, and this is with all respect to Your Honor, is the fact that before the case started, in chambers, Your Honor stated that there was probably no reason why the case couldn't be settled, and furthermore, that Your Honor didn't want to hear a lot of sex talk out in the courtroom. . . .
". . . . . . . . .
"THE COURT: My recollection is I didn't want to hear a lot of sex talk. It all came in, though, didn't it? MR. KAISER: No, Your Honor. THE COURT: He was living in adultery. MR. KAISER: I made two or three offers of proof, and I wasn't allowed to go any further. I'm not contesting the rulings at this time. . . .'"

[5]These remarks were part of a general discussion which ensued after the following question and objection: "Q. [MR. KAISER]:Have you ever been to Ray Butterfield's place up in Placerville with Emily Champion? THE COURT: Since his separation, that would be, this year, anybody—— MR. KING [attorney for defendant]: I'm going to object to this unless some foundation is laid with respect to the knowledge of Mrs. Hansen, Your Honor. It's obviously after the date of the filing of the complaint." The language quoted in the text was directly preceded by the following: "THE COURT: May I caution both of you, I don't want you arguing between yourselves or addressing one another. Address your objections to the Court and maybe we can keep the heat down."

"Q. How did you arrive at the figure thirty or thirty-five dollars? A. I went over this with a friend of mine, because that is approximately what she spends, on the average, on clothes. And she is not a clothes horse. And I think—I don't think that is off balance at all. Q. Well, I'd like to know how you arrived at this figure? MR. KAISER: Well, if Your Honor please, I think it has been asked and answered. THE COURT: She hasn't answered it, really. She says she can't answer. That is all she has told us." Prior to the foregoing exchange the witness had on three occasions stated that she did not know what amount she spent for clothes.[6]

The conduct referred to must be evaluated in the light of established principles governing the conduct of a trial judge. ■ It is generally stated: "The trial of a case should not only be fair in fact, but it should also appear to be fair." (*Pratt* v. *Pratt* (1903) 141 Cal. 247, 252 [74 P. 742]; see also *Webber* v. *Webber* (1948) 33 Cal.2d 153, 155 [199 P.2d 934]; *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 880-881, 883 [19 Cal.Rptr. 106]; *McVey* v. *McVey* (1955) 132 Cal. App.2d 120, 123 [281 P.2d 898]; and *Rosenfield* v. *Vosper* (1941) 45 Cal.App.2d 365, 372 [114 P.2d 29].) ■ A prime corollary of the foregoing rule is that "A trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented to him." (*Rosenfield* v. *Vosper, supra,* at p. 371; and see *Webber* v. *Webber, supra,* at p. 161; *McVey* v. *McVey, supra,* at p. 123; and *Del Ruth* v. *Del Ruth* (1946) 75 Cal.App.2d 638, 648 [171 P.2d 34].)

The foregoing cases, with the exception of the then non-existent *McVey* case,[7] are reviewed and distinguished in *Weil* v. *Weil* (1951) 37 Cal.2d 770, 784-786 [236 P.2d 159], wherein the opinion concludes: "Each of the cited cases in which trial judges have been found guilty of misconduct [citation] has differed substantially from the others; none of them can be a controlling precedent in a new situation in which new fact questions are presented. Differences in the nature of the litiga-

---

[6]The record reflects: "Q. In the past, how much have you spent for clothes? A. I don't know. That would be very hard to estimate.

". . . . . . . . .

"Q. Now, how much in the past have you spent for clothes? A. I don't know. Q. You have no idea? A. No. MR. KAISER: You mean since she was a little girl? MR. KING: No, in the past three years. How much would you average per year for clothes? THE WITNESS: I don't know. Mr. Hansen would know more about that than I.' ''

[7]*McVey* fails to refer to the earlier *Weil* case although they both involved alleged prejudice against granting separate maintenance on the part of the trial judge.

tion, the particular comments or conduct of the trial judge, the scope and reliability of affidavits by parties and attorneys, and the state of the evidence at the trial make it essential that each case turn upon its own facts.'' (P. 786; see also *Hutchinson* v. *Hutchinson* (1963) 223 Cal.App.2d 494, 510-511 [36 Cal.Rptr. 63]; *Gardner* v. *Mobil Oil Co.* (1963) 217 Cal.App. 2d 220, 225 [31 Cal.Rptr. 731]; *Gary* v. *Avery* (1960) 178 Cal. App.2d 574, 579 [3 Cal.Rptr. 20]; and *Barr* v. *Barr* (1953) 119 Cal.App.2d 588, 591 [259 P.2d 957].) The court also stated: ''A judge may properly indicate to litigants the hardship that may result from a rigid insistence upon technical rights. Such suggestions are peculiarly appropriate in a court of equity, and all the more so when the task before the court involves the difficult social and legal adjustments that attend the tragedy of an unsuccessful marriage.'' (*Id.*, p. 776.) The opinion further recognizes the right, if not the duty, of the court to give the parties its tentative conclusions as the case unfolds (*id.*, pp. 777 and 783), or, as later adopted and rephrased, ''an expression of the conclusions of the trial judge up to the moment, in order that counsel may be advised what course to chart.'' (*Gary* v. *Avery, supra,* 178 Cal.App. 2d 574, 579.)

The conduct complained of in this case is in no way comparable to that criticized in the cases first noted. A search of the record reveals no expression of prejudgment of the case or any issue therein by the trial judge. Appellant would equate an aversion to hearing ''a lot of sex talk'' with the ''dirty linen'' alluded to in *Webber* v. *Webber, supra.* The record here shows that all of plaintiff's proffered evidence was received. A judge, by virtue of his office alone, has no less sensibilities than his fellow men, and there is no requirement that he should relish listening to the intimate details of the transgressions of the erring spouse. Certainly an admission of this tenor is not prejudicial where no evidence was actually excluded[8] and the court acknowledged the evidence established the husband had committed adultery.

The other statements of which complaint is made, when viewed with the record as a whole, do not justify the connotation concerning the judge's conduct which appellant would give them. The following language is pertinent to the record here: ''These facts support the view that the trial judge

---

[8]Matters covered by early rejected offers of proof were later covered by admitted testimony.

rendered his decision in an earnest and conscientious endeavor to ascertain, declare and confirm the respective rights and duties of the parties under the law. Even if he were mistaken in his concept of the applicable provisions of law in some respects, that would be judicial error, correctible upon appeal by a party aggrieved. It would not render the trial 'unfair.' " (*Slavich* v. *Slavich* (1951) 108 Cal.App.2d 451, 459 [239 P.2d 100] ; see also *Gardner* v. *Mobil Oil Co., supra,* 217 Cal.App.2d 220, 221-226 ; *Kurtz* v. *Kurtz* (1961) 189 Cal.App.2d 320, 326-328 [11 Cal.Rptr. 230] ; *Gary* v. *Avery, supra,* 178 Cal.App.2d 574, 578-580 ; *Forrest* v. *Forrest* (1954) 125 Cal.App.2d 674, 677-678 [271 P.2d 70] ; *Barr* v. *Barr, supra,* 119 Cal.App.2d 588, 589-590 ; and *Farrar* v. *Farrar* (1919) 41 Cal.App. 452, 457 [182 P. 989].)

## *Denial of Alimony*

The general rules governing the discretion to be exercised in connection with the allowance of alimony are as set forth in an oft-quoted paragraph from *Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249], as follows: "The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381].) " (See *Kurtz* v. *Kurtz, supra,* 189 Cal.App.2d 320, 323 ; *Evans* v. *Evans* (1959) 173 Cal.App.2d 714, 717 [343 P.2d 997] ; *Jones* v. *Jones* (1955) 135 Cal.App.2d 52, 63 [286 P.2d 908] ; and *Forrest* v. *Forrest, supra,* 125 Cal.App.2d 674, 676.)

Appellant relies on the theory that permanent support is awarded as compensation for the wrong done to the wife by the errant husband who has caused dissolution of the marriage, as enunciated in *Arnold* v. *Arnold* (1946) 76 Cal.App.2d 877, 885-886 [174 P.2d 674] as follows: "Section 139 of the Civil Code provides that where a divorce is granted for an offense

of the husband the court may compel him to provide for the maintenance of the children of the marriage and to make a suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, 'having regard to the circumstances of the parties respectively.' The theory of this requirement is that the husband entered upon an obligation which bound him to support his wife during the period of their joint lives, that by his own wrong he has forced her to sever the relation which enabled her to compel the performance of this duty, and that he is required to make compensation for the offense committed by him which deprived her of the benefit of the obligation. (*In re Spencer*, 83 Cal. 460, 464 [23 P. 395, 17 Am.St. Rep. 266]; *Honey* v. *Honey*, 60 Cal.App. 759, 761 [214 P. 250].) A woman past middle age can seldom rehabilitate herself after a break in marriage relations and the courts may properly safeguard her financial future where the marriage is dissolved for the offense of the husband. (*Farrar* v. *Farrar*, 41 Cal.App. 452, 457 [182 P. 989].)'' (In addition to the cases cited, see also *Webber* v. *Webber*, *supra*, 33 Cal.2d 153, 157-158; *Haldeman* v. *Haldeman*, *supra*, 202 Cal.App.2d 498, 507-508; and *Brawman* v. *Brawman*, *supra*, 199 Cal.App.2d 876, 880.)

That the foregoing must be qualified by reference to all of the circumstances of the case is manifest from the opinion of this court in *Whitney* v. *Whitney*, *supra*, 164 Cal.App.2d 577. There the wife who secured a decree of divorce complained of provisions which limited her support to four years and contended ''the penalty is not in due proportion to the degree of cruelty which, she asserts, respondent committed.'' (P. 580.) After setting forth the applicable provisions of section 139 of the Civil Code as referred to in *Arnold*, *supra*, the opinion recites: ''This does not speak of punishment of the guilty party measured by the degree of guilt. It speaks only of legal consequences which flow from conduct which causes dissolution of the marriage. In such a case the law imposes a duty to compensate the opposite party. This compensation does not take the form of exemplary or punitive damages. Instead, the trial court in its exercise of sound discretion is to grant a 'suitable allowance for the support' of the other party, for life or a shorter period 'as the court may deem just, having regard for the circumstances of the respective parties.'

''Appellant cites cases in which the word 'penalty' was used when referring to the duty imposed by this statute. But it does not appear that the courts in those cases measured the

duty in terms of the degree of the so-called offense. We think, therefore, that they used the word 'penalty' as if it meant no more than the expression 'legal consequence.' ██ It is more accurate to say, as the Supreme Court said in *Hall* v. *Superior Court*, 45 Cal.2d 377, 384 [289 P.2d 431] : 'In theory, alimony is considered to be compensation to the injured spouse for the loss resulting from the other's breach of obligations of the marital relationship. (*Arnold* v. *Arnold*, 76 Cal.App.2d 877, 885-886 [174 P.2d 674].) But the right to receive it depends not alone upon the granting of a divorce for the fault of the opposing party, but also upon a showing that the circumstances of the parties justify the award made. (Civ. Code, § 139; *Bowman* v. *Bowman*, 29 Cal.2d 808, 811 [178 P.2d 751, 170 A.L.R. 246].) Despite his prevalence in the divorce action, a spouse may acquire no right to permanent alimony in the absence of a provision for it in the decree. (*Puckett* v. *Puckett*, 21 Cal.2d 833, 841 [136 P.2d 1] ; *Howell* v. *Howell*, 104 Cal. 45, 47 [37 P. 770, 43 Am.St.Rep. 70].) ' '' (Pp. 580-581.)

██ The circumstances in this case reflect that the parties married August 10, 1946, and separated December 27, 1962; that there is one child the issue of the marriage, a daughter born December 12, 1947; that appellant was granted a divorce on the grounds of extreme cruelty, and concededly established that respondent had an affair with another woman in the late summer of 1961 and subsequently entered into a liaison with another woman which was discovered by appellant shortly before the separation. There is evidence tending to show that the relationship of the parties began to disintegrate in 1959 and 1960; that respondent went his own way in the course of going to night school and on weekend hunting, fishing and boating trips; and that appellant, upon taking employment in 1960, developed new interests and social contacts out of the home. Respondent's cross-complaint for divorce was denied and his attempts to show infidelity on the part of appellant rose no higher than the jealous suspicions which he alleged led him to participation in the first affair referred to above.

Respondent is an electrician, 50 years old in 1963, who sometimes works as foreman. His net take home earnings in 1962 were approximately $7,800. He handled practically all of the money matters during the marriage, and property was accumulated with a value of from $40,000 to $50,000. By the decree as entered each has one-half of substantially all of the property by virtue of its status in joint tenancy. The respondent received a boat, trailer, guns and tools of a value of around

$3,650; and appellant received furniture and furnishings variously stated to be worth $800 or $2,000, and in addition thereto the sum of $2,600 to be paid in installments of $150 per month by respondent.

Respondent was ordered to pay $150 per month for the support of his daughter, and life insurance premiums of $561.65 per year for the protection of his wife and daughter. The taxes, insurance, and loan payments on the residence aggregate $1,248.15 or $624.15, about $52 a month, for each of the joint tenants. In addition, there are fire insurance premiums and taxes on other improved realty held in joint tenancy and the cost of automobile insurance to be met jointly. If there is deducted from respondent's net earnings of $7,800 so much of the foregoing payments as are chargeable to him, with an allowance of about $300 for his share of the expenses not definitely established, he will have roughly $4,500 a year or $375 per month for his own use, exclusive of the $150 he was ordered to pay for 17⅓ months for appellant's share of the community property. He testified to needs, exclusive of those included above of $299.60, plus an annual boat tax of $58.[9]

Appellant was 45 years of age at the time of trial. She worked from November 1960 until shortly before commencing the divorce proceedings; in 1961 she grossed $2,700 and in 1962 she earned $2,108.90, from which was withheld $374.60, leaving a net of roughly $145 per month. It would appear from the record that she is capable of earning at least $225 per month gross, or in the neighborhood of $175 to $200 net. She has to meet expenses attendant to the ownership of the joint tenancy property equivalent to those of respondent of about $75 per month. (Although she was left in possession of the residence her right thereto is illusory as it may be terminated by sale or partition.) She testified to monthly expenses, exclusive of the foregoing, of $277.25 making a total of roughly $350 per month. In addition, she claimed $175 for her daughter's expenses other than rent and insurance, which sum was $55 greater than that claimed in her declaration for support pendente lite.

From the foregoing it is apparent that respondent has income of approximately $75 per month for which he failed

---

[9]The record reflects that counsel prepared a list itemizing monthly expenses of $366.70 and fixed yearly expenses of $1,606.05. As the list is not part of the record it cannot be ascertained therefrom whether or not any of these items should have been properly prorated between the parties.

to show a compelling need, and appellant is short about $150 of what she needs for her support, even assuming she works and earns her former income.

In support of the judgment respondent relies upon the principle which has recently been restated by the Supreme Court of this state as follows: ''Even where an innocent spouse is involved, the granting or refusing of alimony in an action for divorce lies largely in the discretion of the trial court. (*Baldwin* v. *Baldwin* (1946) 28 Cal.2d 406, 413 [170 P.2d 670]; see *Webber* v. *Webber* (1948) 33 Cal.2d 153, 161 [199 P.2d 934].) Although other triers of fact might have become more generously disposed toward plaintiff, under the circumstances of the present case we cannot find that there has been an abuse of discretion. This is not a case like *Webber* v. *Webber, supra,* where an innocent spouse after a 36-year marriage is left with no property or source of income and without training or education which would equip her to earn a livelihood in the competitive world. Nor is it a case like *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 879 et seq. [19 Cal. Rptr. 106], where the dissolution of the 21-year marriage was due solely to the husband's fault, and the innocent wife, who had raised their children and had not worked for a period in excess of 20 years, was to be reduced to straitened circumstances.'' (*Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 38-39 [41 Cal.Rptr. 5, 396 P.2d 37].) In upholding the denial of alimony where both parties were granted a divorce, that court looked at the needs of the appealing wife—found she could support herself; to the ability of the husband to support her—clearly present; and the relative guilt of the parties—which was not established as a matter of law as greater on the part of the husband. (See *Nieri* v. *Nieri* (1951) 103 Cal. App.2d 208, 212 [229 P.2d 126], where the prevailing wife's guilt was held to justify a denial of alimony despite the denial of a divorce to the cross-complaining husband.)

Numerous cases have upheld the trial court's exercise of discretion in denying permanent alimony (*Baldwin* v. *Baldwin* (1946) 28 Cal.2d 406, 413 [170 P.2d 670]; *Bird* v. *Bird* (1957) 152 Cal.App.2d 99, 100-101 [312 P.2d 773]; *Rawley* v. *Rawley* (1949) 94 Cal.App.2d 562, 564 [210 P.2d 891]; *Farnsworth* v. *Farnsworth* (1947) 81 Cal.App.2d 380, 383 [184 P.2d 7]; *Duffey* v. *Duffey* (1926) 79 Cal.App. 734, 737 [251 P. 218]); in denying temporary alimony (*Forrest* v. *Forrest, supra,* 125 Cal.App.2d 674, 677); and in limiting the duration of support payments (*Gudelj* v. *Gudelj, supra,* 41

Cal.2d 202, 209; *Kurtz* v. *Kurtz, supra,* 189 Cal.App.2d 320, 328; *Whitney* v. *Whitney, supra,* 164 Cal.App.2d 577, 581; *Newbauer* v. *Newbauer* (1949) 95 Cal.App.2d 36, 39 [212 P.2d 240]). The same considerations apply when the trial court acts to modify support theretofore granted. (*Levitt* v. *Levitt* (1965) 62 Cal.2d 477, 483 [42 Cal.Rptr. 577, 399 P.2d 33]; *Dean* v. *Dean* (1963) 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944]; *Lamborn* v. *Lamborn* (1926) 80 Cal.App. 494, 500 [251 P. 943].)

A minute examination of the facts in the foregoing cases and in those referred to above, in connection with *Arnold* v. *Arnold, supra,*[10] as supporting appellant's position, fails to yield a lodestar which directly and unequivocally charts a path through the facts of this case to a haven for either party. This case has heretofore been purged of the prejudice which was present in *Webber, Brawman* and *Arnold.* An examination of the situation of the parties before and after the divorce (*Haldeman* v. *Haldeman, supra,* 202 Cal.App.2d 498, 509; *Brawman* v. *Brawman, supra,* 199 Cal.App.2d 876, 882; and *Hall* v. *Hall, supra,* 42 Cal.2d 435, 440-442) reflects no such disparity as marked *Haldeman* and *Brawman.* One point of similarity is that appellant both before, according to her testimony, and after her divorce has been frustrated in her attempts to get an adequate allowance from respondent. (See *Forrest* v. *Forrest, supra,* 125 Cal.App.2d 674, 678.) ▮ The question of her ability to work and support herself is one which the trial court can best evaluate with the parties before it. (*Kurtz* v. *Kurtz, supra,* 189 Cal.App.2d 320, 325; *Lamborn* v. *Lamborn, supra,* 80 Cal.App. 494, 498-499.)

▮ Under these circumstances it may well be that appellant has failed to establish an abuse of discretion. There are two factors, however, which preclude such a conclusion. Respondent refers to the $150 monthly payment for child support and the $150 monthly payment for appellant's community interest in attempting to show that she should have gross monthly income of $500 or $550 to meet the needs of herself and her daughter, which, as shown above are approximately $500 to $525. He further alleges that she and the daughter in fact are enjoying occupancy of the family residence.

▮ The $150 award for child support must certainly be considered in determining the respondent's ability to make

---

[10] *Supra,* 76 Cal.App.2d 877.

further payments for the support of his wife, but, as appellant correctly points out, it cannot be used to diminish the wife's legitimate needs for her own support. (*Brawman* v. *Brawman, supra,* 199 Cal.App.2d 876, 883; and *Arnold* v. *Arnold, supra,* 76 Cal.App.2d 877, 886.) ■ Similarly, although the community property awarded to the wife may be considered insofar as it produces a measure of security for her (*Stuckey* v. *Stuckey* (1964) 231 Cal.App.2d 382, 386-387 [41 Cal.Rptr. 792]), where, as here, an award is made payable in installments it should not be considered as support money, because, if so, as it is consumed the wife is to that extent forced to support herself from her own property. In no sense can such payments be considered as in satisfaction of any obligation of the other party to furnish support. (See *Brawman* v. *Brawman, supra,* 199 Cal.App.2d 876, 881-882.)

It appears that appellant is entitled to the unexclusive use of the house whether it be considered as joint tenancy property, as decreed, or community property, as appellant herein contends it should be. The judgment in reciting "provided, however, that plaintiff shall be entitled to the possession, to the exclusion of the defendant, of the family home (No. 1) until the property is sold or the joint tenancy is terminated, whichever shall happen first," does not clearly give appellant any lasting exclusive right to the residence. Her rights under the decree may evaporate at any time by termination of the joint tenancy, in any of a number of ways. (2 Witkin, Summary of Cal. Law (1960) Real Property, §§ 111-117, pp. 967-972.) Furthermore, the decree is silent as to whether appellant, respondent, or both are to make the loan payments and pay the necessary taxes and other expenses attendant to ownership of the property. In *Rawley* v. *Rawley, supra,* 94 Cal.App.2d 562, 564, the court in upholding the denial of support considered an apparent gratuity from the husband which allowed the wife occupancy of one-half of a duplex rent free, and the rents from the other half, despite the fact it was awarded to both parties. No grounds exist for such consideration. In *Barry* v. *Barry* (1954) 124 Cal.App.2d 107, 111 [268 P.2d 147], where the decree was silent on the occupancy of a home awarded to the husband, the court noted that permission for the wife to occupy it could not be considered support and maintenance. (Cf. *Nunes* v. *Nunes, supra,* 62 Cal.2d 33, 39, where the decree gave use and occupancy by way of support to a minor child.) ■ On the other hand, the terms of the decree may in effect be considered as an award in lieu of payments

of alimony, and so subject to the continuing jurisdiction of the court. (*Fairchild* v. *Fairchild* (1948) 87 Cal.App.2d 172, 174-175 [196 P.2d 60].)

In view of the foregoing considerations, and at the express request of respondent, we turn to the trial court's remarks in denying a motion for new trial to determine how it in fact exercised its discretion. (See *Fairchild* v. *Fairchild*, *supra*, 87 Cal.App.2d 172, 174; *Kerr Land & Timber Co.* v. *Emmerson* (1965) *ante*, p. 200 [43 Cal.Rptr. 333].) The oral opinion recites: "THE COURT: I awarded $150 a month support for the child, which I thought was ample to give her, and also required the payment of $150 a month until some $2,600 had been paid to her as a prorata of some of the community obligations.

"My feeling was that that was ample for her to get her life reorganized and get back into the place where she was employed and doesn't require baby-sitters. Just a question of supporting herself. That was my feeling, that $150 for the support of the child is in excess of the actual needs of a sixteen-year-old child, and give her some extra something, and the $150 until she got $2,600 paid to her, I felt, I think I expressed at the time, give her a chance to reorganize her life and get over that shock and get back into employment and take some training so she could become self-supporting. She's not an elderly woman, and she's a woman in good health and has ample opportunities to support herself.

" . . . . . . . . . . . . .

"I also gave her the right, if I remember rightly, to live in the home until the property was sold in joint tenancy."

The foregoing reflects that the trial court commendably acknowledged that the prevailing wife needed support for a period sufficient to enable her "to make adjustments in her financial commitments and to seek employment if necessary." (See *Levitt* v. *Levitt, supra,* 62 Cal.2d 477, 483.) It erred in considering that this acknowledged need would be satisfied by payments for which respondent was otherwise liable and to which she was otherwise entitled. The case must be remanded for clarification of the issue of support including the illusory provisions regarding occupancy of the residence. (Cf. *Nunes* v. *Nunes, supra,* 62 Cal.2d 33, 39-40.)

### The Joint Tenancy Property

The court found that substantially all of the property accumulated by the parties during their marriage was joint tenancy property. This property consisted of two parcels of

real property, a note and deed of trust representing the proceeds of the sale of a third parcel of property, savings and commercial bank accounts, shares of stock, an automobile and a pick-up truck. The evidence is fragmentary as to the manner in which title to the foregoing property was evidenced. Respondent denied that any of the foregoing was community property and alleged that each item was owned by the parties in joint tenancy. In response to a question by the trial court appellant's counsel conceded that these items stood of record in joint tenancy. On this appeal it has been so assumed by the parties and will be considered as so established by the court.

The situation is governed by the rules reviewed and enunciated in *Blankenship* v. *Blankenship* (1963) 212 Cal. App.2d 736, 739-740 [28 Cal.Rptr. 176], as follows: "Where real property is acquired by husband and wife by an instrument in which they are described as husband and wife, the presumption is that such property is their community property unless a different intention is expressed in the instrument. (Civ. Code, § 164.) However, where the deed names the spouses as joint tenants, there is a rebuttable presumption that the property was in fact held in joint tenancy and the burden of overcoming such presumption is on the spouse claiming the property to be community property. (*Bowman* v. *Bowman* (1957) 149 Cal.App.2d 773, 775 [308 P.2d 906]; *Jones* v. *Jones* (1955) 135 Cal.App.2d 52, 61 [286 P.2d 908].)

Accordingly, property thus acquired by the spouses by a joint tenancy deed may be shown to be actually community property according to their intention, understanding or agreement (*Socol* v. *King* (1950) 36 Cal.2d 342, 345 [223 P.2d 627]) and parol evidence is admissible for such purpose. (*Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 757 [146 P.2d 905].) The presumption arising from the form of the joint tenancy deed cannot be rebutted solely by evidence as to the source of the funds used to purchase property. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656].)

Nor can it be overcome by the secret intention of one of the spouses, not disclosed to the other at the time of the deed, that the property shall remain community property. (*Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Gudelj* v. *Gudelj, supra.*) Nevertheless, although the property is acquired by a joint tenancy deed, an understanding to hold it as community property may be inferred from the conduct and declarations of the spouses. (*Bowman* v. *Bowman, supra*; *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 133

[264 P.2d 626].) '' (See, in addition to the cases cited in the foregoing: *Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513]; *Siberell* v. *Siberell* (1932) 214 Cal. 767, 773 [7 P.2d 1003]; *Schindler* v. *Schindler* (1954) 126 Cal.App.2d 597, 601-605 [272 P.2d 566]; *Walker* v. *Walker* (1952) 108 Cal. App.2d 605, 608-609 [239 P.2d 106]; *King* v. *King* (1951) 107 Cal.App.2d 257, 259-260 [236 P.2d 912]; *Dickson* v. *Dickson* (1964) 225 Cal.App.2d 752, 755-756 [37 Cal.Rptr. 718]; *Hutchinson* v. *Hutchinson, supra,* 223 Cal.App.2d 494, 501-503; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 500; *Stauffer* v. *Stauffer* (1955) 135 Cal.App.2d 515, 516-519 [287 P.2d 518]; and *Mademann* v. *Sexauer* (1953) 117 Cal.App.2d 400 [256 P.2d 34].)

From the foregoing it is clear that the presumption from the form in which the property was concededly held supports the trial court's finding that the property is joint tenancy property and not community property. There is no warrant for this court to reweigh the evidence to determine whether or not it would have been sufficient to overcome the presumption if accepted and adopted by the trial court. An examination of the record yields no admission or established agreement that compels consideration of a conclusion contrary to that adopted below. Appellant relies on an alleged misunderstanding as to the nature of the incidents of joint tenancy property on the part of the respondent, and her desire that everything should be ''as ours, both of ours'' as requiring a finding that the property was actually community property. The facts, however, further reflect that her name was added in many instances at her express insistence and so that there would be no complications in case of the death of one of the parties; and that they in fact agreed on this form of ownership. Although an examination of the facts in the cases referred to above reflects a tendency to sustain a finding of community property on slight evidence, no case goes so far as to suggest that a finding in accord with the manner in which the property is held should be reversed. The record here would not justify such an excursion into unchartered seas free of the presumption, even though in many cases it might be more consistent with reality.

The findings of fact reveal that the court found that respondent was entitled to no redress by reason of his cross-complaint. The conclusions of law and the judgment fail to reflect this conclusion. Although this omission to render judgment on the cross-complaint might have subjected the appeal

to dismissal on motion, because the intentions of the trial court are clear it is ordered that the judgment of July 23, 1963, be and it is hereby amended by adding thereto a paragraph stating that defendant take nothing against plaintiff and cross-defendant by reason of his cross-complaint. (*Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629] ; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 523-524 [322 P.2d 933].)

The judgment as so amended is affirmed in all respects except as to the provision therein purporting to deny alimony to the plaintiff, which is reversed, and the case is remanded, with costs on appeal to appellant, to the trial court for further proceedings to determine a suitable allowance for the support and maintenance of appellant in accordance with the views herein expressed.

Sullivan, P. J., and Molinari, J., concurred.